**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**JUVENILE MALE,**
**Defendant-Appellant.**

**No. 86–5615.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 2, 1987.

Decided May 26, 1987.

Richard Luby Cannon, III, Greenville, N.C., for defendant-appellant.

Matthew Francis Bogdanos, for plaintiff-appellee.

Before WINTER, Chief Judge, CHAPMAN, Circuit Judge, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.

HARRISON L. WINTER, Chief Judge:

The question presented is whether retroactive application of a recent amendment to the Juvenile Delinquency Act, 18 U.S.C. § 5032 (Supp. II 1984), violates the *ex post facto* clause, U.S. Const. art. I, § 9, cl. 3. The amendment provides that individuals who commit certain crimes at age fifteen may be prosecuted as adults and thus may face sentences harsher than those imposed on juveniles. The district court held that the amendment could be applied retroactively because it was merely a procedural change in the law. We reverse.

I.

Defendant is charged with the brutal murder of three of his relatives. The killings took place on the United States Marine Base at Camp LeJeune, North Carolina, on August 24, 1981, when defendant was fifteen years old. At that time the Juvenile Delinquency Act did not allow the government to prosecute an individual as an adult for a crime committed at age fifteen. 18 U.S.C. § 5032 (1982). Under the terms of the Act then in effect, defendant could have been prosecuted only as a juvenile and incarcerated only until he reached the age of twenty-one. 18 U.S.C. § 5037 (1982). Although defendant was a suspect at the time of the murders, the government was initially unable to muster sufficient evidence to prosecute him, and by 1983 it lost track of him altogether.

In 1984 Congress amended the Juvenile Delinquency Act to provide that individuals who commit certain crimes at age fifteen may be prosecuted as adults. 18 U.S.C. § 5032 (Supp. II 1984). Under the terms of the amended statute, the government may move for transfer of the defendant to the district court for trial as an adult, and the district court may in its discretion grant the motion if its evaluation of the defendant's background, among other factors, indicates that the transfer is "in the interest of justice." *Id.* If the motion is granted, the defendant is tried and, if convicted, sentenced as an adult.

In May, 1986 the government again became aware of the defendant's whereabouts, and on July 8, 1986 it filed a juvenile information charging him with first-degree murder in an area of exclusive federal jurisdiction in violation of 18 U.S.C. § 1111 (1982). The government based the charge in part on a confession it claims to have elicited from defendant in June, 1986. On

July 11, the government moved for transfer of the defendant to the district court for trial as an adult pursuant to the 1984 amendment to the Juvenile Delinquency Act.

The district court granted the motion, rejecting defendant's argument that retroactive application to him of the 1984 amendment would violate the *ex post facto* clause. It acknowledged that retroactive application of the 1984 amendment would subject defendant to considerably greater punishment than was available at the time of the offense, since under the 1984 amendment he could be sentenced to three terms of life imprisonment or even death, whereas under the law in effect in 1981 he could be sentenced only to a relatively short period of confinement or "treatment." Nonetheless, the district court held that the amendment constituted a "procedural" change in the law, not a "substantive" one. It reasoned that the Juvenile Delinquency Act "is classified as a procedural rather than a substantive statute," that the legislative history referred to the 1984 amendment as procedural, and that "prosecutive status" should be determined "by the accused's age at the time of prosecution, at least where the delay in prosecution is directly traceable to the accused's voluntary acts, such as his absence, or, as in the case at bar, a delayed decision to confess in an otherwise unprovable case." This appeal followed.

## II.

■ The *ex post facto* clause of Article I, Section 9 of the Constitution simply provides: "No ... ex post facto Law shall be passed." A similar clause in Article I, Section 10 applies to the states: "No State shall ... pass any ... ex post facto Law ..." The Supreme Court first interpreted the clause in *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390–91, 1 L.Ed. 648 (1798) (opinion of Chase, J.), defining as *ex post facto* laws:

Every law that aggravates a crime, or makes it greater than it was, when committed.... Every law that changes the

punishment, and inflicts a greater punishment than the law annexed to the crime, when committed.... All these and similar laws are manifestly unjust and oppressive.

The Court's more recent formulations of the doctrine have sounded similar themes. In *Beazell v. Ohio*, 269 U.S. 167, 169, 46 S.Ct. 68, 70 L.Ed. 216 (1925), for example, the Court observed that the *ex post facto* clause prohibits any statute "which makes more burdensome the punishment for a crime, after its commission," and in *Weaver v. Graham*, 450 U.S. 24, 30–31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981), the Court said the clause prohibits application of a criminal statute that is "both retrospective and more onerous than the law in effect on the date of the offense" (footnote omitted).

In our view, retroactive application of the 1984 amendment runs afoul of these formulations. The amendment plainly imposes a "greater," "more burdensome" and "more onerous" punishment than the law in effect in 1981, since it exposes defendant to a much more severe sentence. Had defendant been adjudged delinquent under the law in effect at the time of the offense, he would have been sentenced to at most six years of treatment, probably in the form of incarceration. If, by contrast, he were convicted and sentenced as an adult under the 1984 amendment to the Juvenile Delinquency Act, he could be sentenced to at least three terms of life imprisonment. Indeed, 18 U.S.C. § 1111 purportedly authorizes a sentence of death, even though it is unlikely that the federal death penalty can constitutionally be imposed in its current form. *See Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (striking down state death-penalty laws that give the jury discretion to impose the death penalty). We think it axiomatic that this dramatic retrospective increase in the punishment for the crime violates the *ex post facto* clause.

We recognize, of course, that the *ex post facto* clause permits retrospective changes in procedure that do not alter the elements

of the offense or increase the punishment for the crime. Courts have, for example, upheld laws that retroactively change venue rules, *Gut v. State,* 76 U.S. 35, 19 L.Ed. 573 (1870), broaden the class of competent witnesses, *Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884), reduce the number of judges hearing appeals, *Duncan v. Missouri,* 152 U.S. 377, 382–83, 14 S.Ct. 570, 571–72, 38 L.Ed. 485 (1894) (dictum), grant the government the right to appeal, *Mallett v. North Carolina,* 181 U.S. 589, 597, 21 S.Ct. 730, 733, 45 L.Ed. 1015 (1901), modify the death penalty to the defendant's advantage to comply with constitutional requirements, *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), and forbid experts to express an opinion on the ultimate issue of defendant's sanity, *United States v. Mest,* 789 F.2d 1069 (4 Cir.1986). At the same time, however, courts have invalidated ostensibly procedural laws that retroactively affect the substantive elements of a crime or the applicable punishment. For example, it has been held that the *ex post facto* clause prohibits laws that retroactively abrogate the defense of conviction for a lesser-included offense, *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883), require only 8 jurors instead of 12, *Thompson v. Utah,* 170 U.S. 343, 355, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), make a maximum sentence mandatory, *Lindsey v. Washington,* 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937), increase the requirements necessary to obtain parole, *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *Marshall v. Garrison,* 659 F.2d 440 (4 Cir. 1981), and require forfeiture of property obtained criminally, *United States v. MacDonald,* 607 F.Supp. 1183 (E.D.N.C.1985).

Our review of these cases convinces us that the district court erred when it concluded that the 1984 amendment authorizing prosecution of fifteen-year-old offenders as adults was merely a procedural change. The 1984 amendment is "procedural" only in the most superficial, formal sense, in that it authorizes the government to move to "transfer" the juvenile to the district court for trial as an adult. Such a "transfer" is no mere change in venue, as in *Gut v. State, supra;* it is instead a means by which to impose on certain juveniles the harsher sentences applicable to adults. The significance of the "transfer" is not that the transferred defendant must appear in a different court, the district court, and defend himself according to the procedural rules of the district court instead of those of a juvenile court. Rather, its significance is that the transferred defendant is suddenly subject to much more severe punishment. Only by closing one's eyes to the actual effect of the transfer can one label this radical increase in the applicable punishment a procedural change.

The district court pointed to the legislative history of the 1984 amendment as evidence that Congress thought of the change as a mere procedural one. It is true that Congress referred to the amendments on prosecution of juveniles as "procedural" and stated that the amendments "provide a process that enhances the ability of the criminal justice system to deal effectively with violent youthful offenders between the ages of 15 and 18." S.Rep. No. 98–225, 98th Cong., 2d Sess. 386, *reprinted in* 1984 U.S.Code & Ad.News 3182, 3526. And, as the government stresses, Congress originally described the Juvenile Delinquency Act itself as a "procedural" statute. *See* S.Rep. No. 93–1011, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code & Ad.News 5283, 5284. Again, however, "[t]he Constitution deals with substance, not shadows. Its inhibition was levelled at the thing, not the name." *Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 325 (1867). If applied to this defendant retroactively, the 1984 amendment would have the undisputed effect of increasing the applicable punishment. However Congress may have labeled it, this change can only be characterized as substantive.

The government contends that *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), controls this case. We disagree. In *Dobbert,* the Supreme Court

upheld the retroactive application of an amended death penalty statute that allowed for the first time judicial review of a jury's recommendation for capital punishment. There the state's death penalty statute was in existence when defendant committed the crime but was struck down as unconstitutional after defendant was convicted and sentenced to death. The state reenacted the death penalty statute, adding the safeguard of judicial review of the jury's sentencing recommendation, and defendant was re-tried, convicted and sentenced to death under the new law. The Supreme Court upheld retroactive application of the new statute to defendant on the grounds that it was more lenient than the old statute, which existed when defendant committed the crime. In *Dobbert*, then, unlike this case, the amendment did not increase the applicable punishment. Similarly, *United States v. Mest*, 789 F.2d 1069 (4 Cir.1986), is distinguishable. There we sustained the retroactive use of new Federal Rule of Evidence 704(b), which prohibits experts from expressing an opinion on whether a criminal defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. We emphasized that the new rule did not change the elements of the offense, the proof required to establish guilt, or the applicable punishment. *Id.* at 1071–73. In the case at bar, by contrast, the amendment greatly expands the applicable punishment.

■ Finally, we reject the government's argument, adopted by the district court, that we should look to the date of the filing of the information for purposes of *ex post facto* analysis, not the date of the offense. It has been well-settled law for nearly two hundred years that the relevant date for *ex post facto* analysis is the date of the offense, not the date of prosecution. *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390–91 (1798); *Weaver v. Graham*, 450 U.S. 24, 30–31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1986); *Marshall v. Garrison*, 659 F.2d 440, 442 n. 3 (4 Cir.1981). The district court apparently

held that defendant should somehow be estopped from invoking the earlier date because he delayed his alleged confession, which led to this prosecution, until June 1986. But the court cited no case, and we know of none, holding that the crucial date for *ex post facto* analysis could be "tolled" by actions of the defendant. Moreover, the district court's apparent suggestion that a delayed confession can estop a criminal defendant, and that refusal to confess is tantamount to evasion of prosecution, cannot be squared with the defendant's Fifth Amendment privilege against self-incrimination. In any case, we reaffirm the centuries-old principle that the crucial date for *ex post facto* purposes is the date of the offense.

### III.

In sum, we hold that retroactive application to defendant of the 1984 amendment authorizing prosecution of certain juveniles as adults violates the *ex post facto* clause. We are bound by the result Congress dictated when it drafted the law in effect in 1981—that fifteen-year-old offenders should be tried as juveniles, even if they are not charged until they reach the age of twenty. The Constitution simply does not allow Congress to increase the applicable punishment after the fact.

The judgment of the district court is reversed and the case remanded for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**