[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 437.]

THE STATE OF OHIO, APPELLEE, *v.* WALLS, APPELLANT.

[Cite as *State v. Walls*, 2002-Ohio-5059.]

*Criminal law—Conviction for aggravated murder for an offense that occurred 13 years prior to defendant's indictment and while he was still a minor— Conviction affirmed, when—Application of juvenile statutes in place at the time the state commenced criminal proceedings against defendant did not impair defendant's substantive rights within the meaning of Van Fossen v. Babcock & Wilcox Co. and its progeny—Ex Post Facto Clause or defendant's due process rights not violated.*

(No. 2001-0099—Submitted March 13, 2002—Decided October 9, 2002.)

APPEAL from the Court of Appeals for Butler County, No. CA99-10-174.

_____

**COOK, J.**

{¶1} Defendant-appellant, Kevin Walls, appeals from his aggravated murder conviction for an offense that occurred 13 years prior to his indictment and while he was still a minor. Focusing upon the time lapse between the indictment and the offense, Walls argues that his conviction is unconstitutional because of (1) a retroactive application of a law requiring that he be tried as an adult and (2) unreasonable preindictment delay. Because we find no merit to either of his constitutional claims, we affirm his conviction.

I

{¶2} On March 8, 1985, Ann Zwiefelhoefer was found dead in her home, having bled to death from nine stab wounds. When investigators arrived at the scene, they found her home ransacked in several areas and appearing as though it had been forcibly entered. The Butler County Coroner examined the victim's body

and stated that she likely died no earlier than approximately 4:00 p.m. on the preceding day.

{¶3} While at the scene, investigators retrieved a number of latent fingerprints and submitted them to the Ohio Bureau of Criminal Identification and Investigation for analysis. Investigators compared these fingerprints with those of various suspects and other persons having business at the victim's residence. The comparisons revealed no matches and the fingerprints remained unidentified for 13 years.

{¶4} In the summer of 1998, some of the latent prints were entered into an on-line automated fingerprint identification system that had just become available. This new system identified Walls's fingerprints as a good match. After a visual comparison and subsequent analysis by an FBI specialist in Washington, D.C., experts discovered that Walls's fingerprints matched those on a coin jar found in the victim's basement, on a fondue pot in the kitchen pantry, on the storm door, and on a cup and a dish lying on the floor.

{¶5} Following this discovery, the investigators located Walls for questioning. Walls, who was 15 years old at the time of the murder, stated that he had never been to the victim's home or to any other home on that street. Investigators learned, however, that Walls had attended school only 436 yards from the victim's home on the day of the murder.

{¶6} The Butler County Grand Jury indicted Walls on November 13, 1998, for aggravated murder in violation of R.C. 2903.01(B). Even though Walls was a minor at the time of the alleged murder, the versions of R.C. 2151.011(B)(6)(c) and 2151.23(I) then in effect allowed the state to try Walls as an adult. See 147 Ohio

Laws, Part II, 3421-3422[1]; 146 Ohio Laws, Part II, 2054.[2] Walls moved to dismiss the indictment, arguing that the 1985 version of R.C. 2151.011(B)(1) should control his disposition rather than the 1997 statutes. Under the 1985 law, Walls could not be tried as an adult until a juvenile court had first bound him over for trial to the general division of the court of common pleas. See former R.C. 2151.011(B)(1), 140 Ohio Laws, Part I, 584.[3] Walls also moved to dismiss the indictment on the ground that the delay between the offense charged and the indictment was so great that he was prejudiced by the disappearance of evidence implicating another person in the crime. The trial court denied both motions and tried Walls as an adult. Walls was ultimately convicted of aggravated murder and sentenced to life imprisonment.

{¶7} Walls appealed his conviction, raising the issues of retroactive application of the law, preindictment delay, and prosecutorial misconduct. The

---

1. {¶a} The version of R.C. 2151.011(B)(6)(c) in effect in 1997 provided:

{¶b} "Any person who, while under eighteen years of age, commits an act that would be a felony if committed by an adult and who is not taken into custody or apprehended for that act until the person attains twenty-one years of age *is not a child in relation to that act*." (Emphasis added.)

2. {¶a} R.C. 2151.23(I), as it existed in 1997, stated:

{¶b} "If a person under eighteen years of age allegedly commits an act that would be a felony if committed by an adult and if the person is not taken into custody or apprehended for that act until after the person attains twenty-one years of age, *the juvenile court does not have jurisdiction* to hear or determine any portion of the case charging the person with committing that act. In those circumstances * * *, the case charging the person with committing the act *shall be a criminal prosecution* commenced and heard in the appropriate court having jurisdiction of the offense as if the person had been eighteen years of age or older when the person committed the act, all proceedings pertaining to the act shall be within the jurisdiction of the court having jurisdiction of the offense, and the court having jurisdiction of the offense has all the authority and duties in the case as it has in other criminal cases commenced in that court." (Emphasis added.)

3. {¶a} In 1985, R.C. 2151.011(B)(1) provided:

{¶b} " 'Child' means a person who is under the age of eighteen years, except that any child who violates a federal or state law or municipal ordinance prior to attaining eighteen years of age shall be deemed a 'child' *irrespective of his age at the time the complaint is filed or hearing had on the complaint* and except that a person whose case is transferred for criminal prosecution pursuant to [former R.C. 2151.26] and is subsequently convicted in that case shall after the transfer be deemed not to be a child in any case in which he is alleged to have committed an act that if committed by an adult would constitute the offense of murder or aggravated murder, or would constitute an aggravated felony of the first or second degree or a felony of the first or second degree."

appellate court affirmed the conviction, and the cause is now before this court pursuant to the allowance of a discretionary appeal.

II

{¶8} Walls urges us to void the conviction against him, arguing that the court of common pleas, general division, lacked subject matter jurisdiction to hear his case. At the center of this jurisdictional argument is his belief that application of the 1997 statutes, R.C. 2151.26 and 2151.011(B)(6), violated the Retroactivity Clause of the Ohio Constitution. Though 29 years old at the time of indictment, Walls contends that he had a right to juvenile treatment under the law as it existed at the time of the offense in 1985. He insists that the amended statutes are unconstitutionally retroactive as applied to his situation because, without benefit of those statutes, the common pleas court lacked jurisdiction to try him as an adult unless there had first been a bindover proceeding in the juvenile court. See *State v. Wilson* (1995), 73 Ohio St.3d 40, 652 N.E.2d 196, paragraph one of the syllabus.

A

{¶9} "Retroactive laws and retrospective application of laws have received the near universal distrust of civilizations." *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 104, 522 N.E.2d 489; see, also, *Landgraf v. USI Film Products* (1994), 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (noting that "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic"). In recognition of the "possibility of the unjustness of retroactive legislation," *Van Fossen*, 36 Ohio St.3d at 104, 522 N.E.2d 489, Section 28, Article II of the Ohio Constitution provides that the General Assembly "shall have no power to pass retroactive laws." It is now settled in Ohio that a statute runs afoul of this provision if it " 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.' " *Van Fossen*, 36 Ohio St.3d at 106,

522 N.E.2d 489, quoting *Cincinnati v. Seasongood* (1889), 46 Ohio St. 296, 303, 21 N.E. 630; accord *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 354, 721 N.E.2d 28; *State v. Cook* (1998), 83 Ohio St.3d 404, 411, 700 N.E.2d 570.

{¶10} This court has articulated a two-part framework, involving both statutory and constitutional analyses, for determining whether a statute is impermissibly retroactive under Section 28, Article II. Because R.C. 1.48 establishes a presumption that statutes operate prospectively only, "[t]he issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply." *Van Fossen*, 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus. If there is no " 'clear indication of retroactive application, then the statute may *only* apply to cases which arise subsequent to its enactment.' " (Emphasis sic.) Id. at 106, 522 N.E.2d 489, quoting *Kiser v. Coleman* (1986), 28 Ohio St.3d 259, 262, 28 OBR 337, 503 N.E.2d 753. If we can find, however, a "clearly expressed legislative intent" that a statute apply retroactively, we proceed to the second step, which entails an analysis of whether the challenged statute is substantive or remedial. *Cook*, 83 Ohio St.3d at 410, 700 N.E.2d 570; see, also, *Van Fossen*, 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph two of the syllabus.

{¶11} In applying the analytic framework of *Van Fossen* and its progeny, the court of appeals found that the amended statutes did not apply retrospectively and therefore declined to undertake the second step of the *Van Fossen* analysis. The court reasoned:

{¶12} "The current version of R.C. 2151.011(B)(6)(c) determines the present jurisdiction of the court of common pleas general division by looking to the charged individual's age at the time of the complaint or indictment. This section makes irrelevant any consideration of the accused's age at the time he committed the crime. Thus, by its very terms, the statute relies on no factor that would extend

back in time before the date of its 1997 amendment. We hold that the statute was intended to operate *prospectively* to confer jurisdiction on the general division of the court of common pleas regardless of whether the juvenile was under the age of eighteen at the time he or she committed the crime." (Emphasis added.)

{¶13} From this analysis, it is evident that the court of appeals viewed the date on which criminal proceedings commenced against Walls as the relevant date of assessing whether the amended juvenile statutes operated prospectively or retrospectively. And although the court of appeals cited none, there exists some authority that arguably supports this approach. See, e.g., *State ex rel. Plavcan v. School Emp. Retirement Sys. of Ohio* (1994), 71 Ohio St.3d 240, 243, 643 N.E.2d 122 ("Statutes that reference past events to establish current status have been held not to be retroactive"); *Cox v. Hart* (1922), 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332 ("A statute is not made retroactive merely because it draws upon antecedent facts for its operation"); see, also, *French v. Dwiggins* (1984), 9 Ohio St.3d 32, 39, 9 OBR 123, 458 N.E.2d 827 (Holmes, J., dissenting) ("If there is no specific expression by the General Assembly that the statute is to be retrospective in its application * * *, the statute will be applied to causes of action arising subsequent to the effective date of the legislation"). But while the court of appeals' approach may be adequate to resolve retroactivity challenges to many types of legislation, particularly laws pertaining to purely civil matters, it is not ideal when the application of a new statute penalizes *criminal* conduct that occurred prior to the statute's effective date. In this circumstance, the date of the *offense* is the governing date when assessing whether a given statute is retroactive. See *Weaver v. Graham* (1981), 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (noting that a law is retrospective for purposes of ex post facto analysis if it "appl[ies] to events occurring before its enactment"). Thus, in order to assess properly whether the amendments to R.C. Chapter 2151 are retrospective, we must determine whether the General Assembly intended them to apply to offenses occurring before the

statutes became effective in 1997. See *In re Daniel H.* (1996), 237 Conn. 364, 376, 678 A.2d 462 (identifying the date of the offense as the governing date in assessing whether a juvenile statute was impermissibly retroactive).

{¶14} Focusing on the date of Walls's offense, we conclude that the General Assembly intended that the 1997 amendments to R.C. Chapter 2151 apply retrospectively. The 1997 version of R.C. 2151.011(B)(6)(c) changed the definition of "child" to *exclude* "[a]ny person who, while under eighteen years of age, commits an act that would be a felony if committed by an adult and who is not taken into custody or apprehended for that act until after that person attains twenty-one years of age." Also effective in 1997, the General Assembly added R.C. 2151.23(I), which declared the juvenile court's lack of jurisdiction over a person 21 years of age who is apprehended for an offense committed prior to the person's 18th birthday. 146 Ohio Laws, Part II, 2054. These changes to the statutory scheme effectively removed anyone over 21 years of age from juvenile-court jurisdiction, regardless of the date on which the person allegedly committed the offense. In other words, the statutory amendments made the age of the offender *upon apprehension* the touchstone of determining juvenile-court jurisdiction without regard to whether the alleged offense occurred prior to the amendments' effective date. From these circumstances, we find an express legislative intent that the juvenile statutes apply retroactively. Cf. *Cook*, 83 Ohio St.3d at 410, 700 N.E.2d 570 (finding a "clearly expressed legislative intent" that sexual-predator statutes apply retrospectively because the statutes imposed requirements on offenders based on offenses committed before the statutes' effective date).

B

{¶15} Having held that the juvenile statutes apply retroactively (i.e., to juvenile offenses committed prior to the statutes' effective date), we next proceed to the constitutional prong of the *Van Fossen* analysis. As we have previously noted, a statute is unconstitutionally retroactive under Section 28, Article II "if it

impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction." *Bielat*, 87 Ohio St.3d at 354, 721 N.E.2d 28; see, also, *Van Fossen*, 36 Ohio St.3d at 106-107, 522 N.E.2d 489. On the other hand, a statute that is " 'purely remedial' " does not violate Section 28, Article II. *Van Fossen*, 36 Ohio St.3d at 107, 522 N.E.2d 489, quoting *Rairden v. Holden* (1864), 15 Ohio St. 207, 1864 WL 26, paragraph two of the syllabus. We have defined as "remedial" those laws affecting merely " 'the methods and procedure[s] by which *rights are recognized, protected and enforced, not * * * the rights themselves*.' (Emphasis added.)" *Bielat*, 87 Ohio St.3d at 354, 721 N.E.2d 28, quoting *Weil v. Taxicabs of Cincinnati, Inc.* (1942), 139 Ohio St. 198, 205, 22 O.O. 205, 39 N.E.2d 148.

{¶16} Walls argues that the 1997 statutes were "substantive" within the meaning of our retroactivity cases because of the statutes' profound effect on the jurisdiction of the juvenile and common pleas courts. Whereas the old statutes required a bindover proceeding in juvenile court as a prerequisite to criminal proceedings in the court of common pleas for persons situated similarly to Walls, the 1997 statutes divested the juvenile court of jurisdiction. Thus, the 1997 statutes subjected a person 21 years of age or older to criminal prosecution in the general division of the court of common pleas, regardless of the person's age at the time of the alleged offense and without any necessity of a bindover proceeding in juvenile court. Emphasizing the "extraordinary" difference between delinquency proceedings in juvenile court and criminal proceedings in common pleas court, Walls contends that the 1997 statutory changes were substantive because they deprived him of juvenile-court proceedings to which he had a vested right. We disagree.

{¶17} The 1997 changes to R.C. Chapter 2151 did not impair any of Walls's vested rights within the meaning of our retroactivity jurisprudence. Although the 1997 amendments to the juvenile statutes allowed criminal prosecution without the

bindover proceeding required under the 1985 law, we cannot characterize this change as anything other than remedial. Even under the law in effect in 1985, Walls was subject to criminal prosecution in the general division of a court of common pleas if the juvenile court made certain determinations specified by statute. See former R.C. 2151.26(A) and (E), 140 Ohio Laws, Part I, 585-586. Thus, under either the 1985 law or the 1997 law, Walls was on notice that the offense he allegedly committed could subject him to criminal prosecution as an adult in the general division of the court of common pleas. The 1997 law merely removed the procedural prerequisite of a juvenile-court proceeding. Even though they may have an occasional substantive effect on past conduct, "it is generally true that laws that relate to procedures are ordinarily remedial in nature." *Cook*, 83 Ohio St.3d at 411, 700 N.E.2d 570; see, also, *In re Nevius* (1963), 174 Ohio St. 560, 564, 23 O.O.2d 239, 191 N.E.2d 166.

{¶18} Walls makes much of the fact that the new statutes effected substantial changes to the *jurisdiction* of the juvenile and common pleas courts. He maintains that the changes must be substantive within the meaning of our retroactivity cases because the amendments conferred jurisdiction where it was previously lacking. See *State v. Wilson*, 73 Ohio St.3d at 44, 652 N.E.2d 196 (noting that the juvenile court had *exclusive* subject matter jurisdiction in the absence of a bindover procedure under former R.C. 2151.26). But Walls offers no authority for the proposition that legislative changes in jurisdiction implicate substantive rights when applied to conduct occurring before the effective date of the amendments. To the contrary, "[a]pplication of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.'" *Landgraf*, 511 U.S. at 274, 114 S.Ct. 1483, 128 L.Ed.2d 229, quoting *Hallowell v. Commons* (1916), 239 U.S. 506, 508, 36 S.Ct. 202, 60 L.Ed. 409; see, also, *People v. Pena* (2001), 321 Ill.App.3d 538, 542, 254 Ill.Dec. 608, 747 N.E.2d 1020 (observing that a bindover proceeding is a procedural matter that

"determin[es] the forum in which guilt or innocence will be adjudicated"), citing *People v. Taylor* (1979), 76 Ill.2d 289, 302, 29 Ill.Dec. 103, 391 N.E.2d 366.

{¶19} We therefore hold that application of the juvenile statutes in place at the time the state commenced criminal proceedings in this case did not impair Walls's substantive rights within the meaning of *Van Fossen* and its progeny.

III

{¶20} Our conclusion that the amended statutes do not impair Walls's substantive rights does not end our constitutional inquiry. Walls also argues that the amendments to the juvenile statutes, when retroactively applied to him, are ex post facto laws prohibited by Section 10, Article I of the United States Constitution.[4]

{¶21} "Although the Latin phrase '*ex post facto*' literally encompasses any law passed 'after the fact,' it has long been recognized by [the United States Supreme Court] that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood* (1990), 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30. Not just any "disadvantage" to an offender, however, will run afoul of the Ex Post Facto Clause. The clause implicates only certain types of legislative acts:

{¶22} " '1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates* a *crime*, or makes it *greater* than it was, when

---

4. Walls limits his ex post facto argument here to the federal Constitution. We note, however, that various courts of appeals have observed that the prohibition of "retroactive laws" in Section 28, Article II of the Ohio Constitution includes a prohibition of ex post facto laws. See *State v. Gleason* (1996), 110 Ohio App.3d 240, 246, 673 N.E.2d 985; *State v. Smith* (1984), 16 Ohio App.3d 114, 116, 16 OBR 121, 474 N.E.2d 685, fn. 4; *State v. Ahedo* (1984), 14 Ohio App.3d 254, 256, 14 OBR 283, 470 N.E.2d 904; *State ex rel. Corrigan v. Barnes* (1982), 3 Ohio App.3d 40, 3 OBR 43, 443 N.E.2d 1034. This court has also implied as much. See, e.g., *Van Fossen*, 36 Ohio St.3d at 107, 522 N.E.2d 489 (observing that Section 28, Article II was "a much stronger prohibition" on retroactive legislation than its precursor, which was limited to ex post facto laws and laws impairing contracts).

committed. 3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender*.' " (Emphasis sic.) Id. at 42, 110 S.Ct. 2715, 111 L.Ed.2d 30, quoting *Calder v. Bull* (1798), 3 U.S. (Dall.) 386, 390, 1 L.Ed. 648 (opinion of Chase, J.); see, also, *Carmell v. Texas* (2000), 529 U.S. 513, 521-522, 120 S.Ct. 1620, 146 L.Ed.2d 577.

{¶23} Even though a law may not impair "vested rights" within the meaning of our retroactivity cases, the law may still run afoul of the ex post facto prohibition if it falls within one of the four *Calder* categories enumerated above. See *Weaver v. Graham* (1981), 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17, fn. 13 (referring to a vested-rights analysis of retroactivity as "irrelevant" to an ex post facto inquiry); see, also, *Collins*, 497 U.S. at 46, 110 S.Ct. 2715, 111 L.Ed.2d 30 ("simply labeling a law 'procedural' * * * does not thereby immunize it from scrutiny under the *Ex Post Facto* Clause"). In this case, Walls argues that the amended juvenile statutes applied in his case implicate the first and third categories of ex post facto legislation. He contends that by making criminal prosecution mandatory for a person over 21 years of age, regardless of the person's age at the time of the offense, the legislature has impermissibly criminalized juvenile acts (implicating the first *Calder* factor) and enhanced the punishment meted out for their commission (implicating the third *Calder* factor).

A

{¶24} Walls invokes the first category of ex post facto laws by emphasizing his age at the time of the murder. Because Walls was only 15 years old at the time of the offense, he maintains that his conduct was "a *civil delinquency act* and remained a civil delinquency act unless and until the Juvenile Division held a proper bind-over proceeding resulting in [Walls] being bound over to the adult justice

system." (Emphasis sic.) Walls therefore concludes that the amended statutes, as applied to him, impermissibly transformed a "civil delinquency act" into a criminal offense.

{¶25} It is true that this court has characterized juvenile proceedings as civil rather than criminal. See *In re Anderson* (2001), 92 Ohio St.3d 63, 65, 748 N.E.2d 67. But the "civil" label traditionally attached to juvenile matters does not lead a fortiori to a conclusion that Walls's act was not "criminal" at the time he committed it. "[D]etermining the relevance of constitutional policies, like determining the applicability of constitutional rights, in juvenile proceedings, requires that courts eschew 'the "civil" label-of-convenience which has been attached to juvenile proceedings,' *In re Gault* [(1967), 387 U.S. 1, 50, 87 S.Ct. 1428, 18 L.Ed.2d 527], and that 'the juvenile process * * * be candidly appraised.' [Id. at 21, 87 S.Ct. 1428, 18 L.Ed.2d 527]." *Breed v. Jones* (1975), 421 U.S. 519, 529, 95 S.Ct. 1779, 44 L.Ed.2d 346.

{¶26} Whatever their label, juvenile delinquency laws feature inherently criminal aspects that we cannot ignore. See *Anderson*, 92 Ohio St.3d at 65-66, 748 N.E.2d 67. For this reason, numerous constitutional safeguards normally reserved for criminal prosecutions are equally applicable to juvenile delinquency proceedings. Id. at 66, 748 N.E.2d 67, citing *In re Gault*, 387 U.S. 1, 31-57, 87 S.Ct. 1428, 18 L.Ed.2d 527 (holding that various Fifth and Sixth Amendment protections apply to juvenile proceedings), and *In re Winship* (1970), 397 U.S. 358, 365-368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (holding that the state must prove juvenile delinquency beyond a reasonable doubt); see, also, *Breed*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (holding that a delinquency proceeding places a juvenile in jeopardy for purposes of the Double Jeopardy Clause); *In re Melvin J.* (2000), 81 Cal.App.4th 742, 759-760, 96 Cal.Rptr.2d 917 (relying on *Gault*, *Winship*, and *Breed* to hold that ex post facto principles apply to juvenile proceedings). Just as we cannot ignore the criminal aspects inherent in juvenile proceedings for purposes

of affording certain constitutional protections, we also cannot ignore the criminality inherent in juvenile conduct that violates criminal statutes. See former R.C. 2151.02(A), now R.C. 2152.02(F)(1) (defining "delinquent child" as a child who commits an act that would be a crime if committed by an adult). Whether the state prosecutes a criminal action or a juvenile delinquency matter, its goal is the same: to vindicate a vital interest in the enforcement of *criminal* laws. *Breed*, 421 U.S. at 531, 95 S.Ct. 1779, 44 L.Ed.2d 346.

**{¶27}** In light of the criminal aspects inherent in Ohio's juvenile law, we reject Walls's contention that the amended statutes applied in his case had an impermissible ex post facto effect under the first *Calder* category. The primary evil prohibited by this category is the legislature's retroactive alteration of the definition of crimes. See *Collins*, 497 U.S. at 43, 110 S.Ct. 2715, 111 L.Ed.2d 30. Walls cannot persuasively argue here that the legislature altered the definition of aggravated murder in a manner that has retroactively criminalized his conduct. R.C. 2903.01(B), the statute under which Walls was convicted, was the same in all material respects at the time of Walls's offense in 1985 as it was during the criminal proceedings against him. Compare 139 Ohio Laws, Part I, 3, with 146 Ohio Laws, Part VI, 10424-10425. And under either the law effective at the time of the offense or the law effective at the time of the indictment, Walls was subject to criminal prosecution for his conduct. Walls therefore cannot complain of a lack of fair warning that his conduct could be treated as a criminal offense. See *Weaver v. Graham*, 450 U.S. at 28-29, 101 S.Ct. 960, 67 L.Ed.2d 17 (noting that the Ex Post Facto Clause assures that "legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed"). Inasmuch as Walls was already subject to criminal prosecution under the old law, we cannot say that the new statutes criminalized actions that were "innocent when done" within the meaning of *Calder*'s first category. Cf. *People v. Pena*, 321 Ill.App.3d at 543-544, 254 Ill.Dec. 608, 747 N.E.2d 1020 (retroactive application of new law

providing for a juvenile's "presumptive transfer" to adult court did not violate Ex Post Facto Clause).

B

{¶28} Walls also invokes the third *Calder* factor, which prohibits as ex post facto any law that inflicts a greater punishment for a crime than the law annexed to the crime at its commission. As we have previously stated, the common pleas court could not have tried Walls as an adult under the 1985 law unless and until the juvenile court had first conducted a bindover proceeding under former R.C. 2151.26. Only after a juvenile court had made the necessary determinations in former R.C. 2151.26(A) could it have transferred Walls to the court of common pleas for a criminal trial. Thus, under the law in place in 1985, Walls was technically eligible to remain within the jurisdiction of the juvenile court, leaving open the possibility that he could receive lesser "punishment" (i.e., the dispositional orders provided in former R.C. 2151.355 for children adjudicated delinquent) than the term of life imprisonment he received upon his conviction in criminal court. By divesting the juvenile court of jurisdiction in his case, Walls contends, the amended statutes necessarily "raised the specter of substantially increased criminal punishment" by removing any possibility of his case being treated as a juvenile delinquency matter.

{¶29} Retroactive changes in the measure of punishment are impermissibly ex post facto if they subject a defendant to a more severe sentence than was available at the time of the offense. See *Lindsey v. Washington* (1937), 301 U.S. 397, 401, 57 S.Ct. 797, 81 L.Ed. 1182. In one sense, Walls's punishment under the new statutes was not "more severe" than under the old; he could have received the same punishment under the 1985 law upon conviction for aggravated murder (albeit only after a bindover proceeding in juvenile court). Assessing whether a punishment is "more severe" under a later statute, however, involves more than simply comparing the range of punishments available under an old statute. "[O]ne

14

is not barred from challenging a change in the penal code on ex post facto grounds simply because the sentence he received under the new law was not more onerous than that which he might have received under the old." *Dobbert v. Florida* (1977), 432 U.S. 282, 300, 97 S.Ct. 2290, 53 L.Ed.2d 344; see, also, *Miller v. Florida* (1987), 482 U.S. 423, 432, 107 S.Ct. 2446, 96 L.Ed.2d 351. Rather, a defendant may establish an ex post facto violation by demonstrating that a penal statute increases the measure of punishment for crimes committed before its effective date. *California Dept. of Corrections v. Morales* (1995), 514 U.S. 499, 505-506, 115 S.Ct. 1597, 131 L.Ed.2d 588; id. at 510, 115 S.Ct. 1597, 131 L.Ed.2d 588, fn. 6.[5]

{¶30} In this case, the statutory amendments at issue arguably subjected Walls to a more severe range of punishment than he faced under the 1985 law. Because of the amendments to R.C. Chapter 2151, Walls stood no chance of remaining in the juvenile system and could no longer receive the lesser "punishment" available in juvenile dispositional orders. But our analysis of the statutory changes does not stop there. The types of legislative adjustments that are " 'of sufficient moment to transgress the constitutional prohibition' [of ex post facto laws] *must* be a matter of 'degree.' " (Emphasis sic.) *Morales*, 514 U.S. at 509, 115 S.Ct. 1597, 131 L.Ed.2d 588, quoting *Beazell v. Ohio* (1925), 269 U.S. 167, 171, 46 S.Ct. 68, 70 L.Ed. 216. Accordingly, to succeed on his ex post facto claim based on the third *Calder* factor, Walls must show that the amendments to the juvenile law applied in his case actually "produce[d] a sufficient risk of increasing the measure of punishment attached to" his crime. *Morales*, 514 U.S. at 509, 115 S.Ct. 1597, 131 L.Ed.2d 588. A "speculative and attenuated" possibility that the statutory change has increased the measure of punishment will *not* constitute an ex

---

5. In *Lindsey*, for example, the United States Supreme Court held that a statute providing a mandatory sentence of fifteen years' imprisonment violated the Ex Post Facto Clause when applied to an offender who committed his crime at a time when the penalty was only an indeterminate sentence of not more than 15 years. *Lindsey*, 301 U.S. at 401, 57 S.Ct. 797, 81 L.Ed. 1182.

post facto violation. Id. In other words, Walls must demonstrate that he had more than a speculative chance under the old law of being tried in juvenile court and subjected only to juvenile delinquency dispositions.

{¶31} Walls's claim that the new statutes actually increased the measure of punishment for his conduct is speculative at best. While Walls perhaps remained eligible for retention within the jurisdiction of the juvenile court under a technical reading of the old statutes, the practical reality is that Walls had virtually no chance of being kept in the juvenile system. In 1985, the criteria for deciding whether to transfer a child to common pleas court for trial as an adult were contained in former R.C. 2151.26(A):

{¶32} "After a complaint has been filed alleging that a child is delinquent by reason of having committed an act that would constitute a felony if committed by an adult, the court at a hearing may transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense, after making the following determinations:

{¶33} "(1) The child was fifteen or more years of age at the time of the conduct charged;

{¶34} "(2) There is probable cause to believe that the child committed the act alleged;

{¶35} "(3) After an investigation, including a mental and physical examination of the child made by a public or private agency, or a person qualified to make the examination, that there are reasonable grounds to believe that:

{¶36} "(a) He is not amenable to care or rehabilitation or further care or rehabilitation in any facility designed for the care, supervision, or rehabilitation of delinquent children;

{¶37} "(b) The safety of the community may require that he be placed under legal restraint, including, if necessary, for the period extending beyond his majority." 140 Ohio Laws, Part I, 585-586. See, also, Juv.R. 30.

16

**{¶38}** The purpose behind former R.C. 2151.26 was "the assessment of the probability of rehabilitating the child *within the juvenile justice system.*" (Emphasis added.) *State v. Douglas* (1985), 20 Ohio St.3d 34, 36, 20 OBR 282, 485 N.E.2d 711. Given this overriding statutory purpose, we find no basis to conclude that Walls had any realistic chance of remaining in the juvenile system under the 1985 law.

**{¶39}** The first two factors of former R.C. 2151.26 are undoubtedly met in Walls's case: Walls does not dispute that he was 15 years of age at the time of the alleged offense, and the grand jury indictment establishes that there was probable cause to believe that he had committed the act. Whether Walls had any chance of remaining within juvenile-court jurisdiction under the 1985 law therefore depends on whether there was something more than a speculative possibility that a juvenile court could have found him amenable to juvenile treatment.

**{¶40}** Even a cursory reading of former R.C. 2125.26(A)(3) reveals that the statute does not contemplate treatment of a 29-year-old adult within the juvenile justice system. The statute contains not even one inquiry into whether a person beyond the age of majority should be protected as though still a minor. Indeed, the language in former R.C. 2125.26(A)(3)(a) and (b), with its emphasis on "care or rehabilitation" and reference to legal restraint "for the period extending beyond his majority," contemplates the assessment of a person *younger* than 21 years of age. Moreover, even if a juvenile court retained jurisdiction over a delinquency complaint against a person over 21 years of age, it would find its dispositional options profoundly limited. For example, the law in place in 1985 (and in 1997 for that matter) would have prevented a juvenile court from imposing any type of institutionalization or confinement on Walls. See, e.g., *State v. Iacona* (2001), 93 Ohio St.3d 83, 90, 752 N.E.2d 937 (observing that former R.C. 2151.355[A][4] and [A][6] forbid the confinement of any person in the Department of Youth Services beyond the age of 21); *In re J.B.* (1995), 71 Ohio Misc.2d 63, 66, 654 N.E.2d 216

(recognizing that former R.C. 2151.355[A][11] prohibited a juvenile court from sentencing a person adjudicated delinquent to confinement in an adult correctional facility).

**{¶41}** Notwithstanding the broad degree of discretion afforded to juvenile courts in bindover decisions, see *State v. Watson* (1989), 47 Ohio St.3d 93, 95-96, 547 N.E.2d 1181, the inherent limitations on the juvenile system under the law in place in 1985 convince us that the juvenile court would have had virtually no discretion to retain jurisdiction in Walls's case because of his mature age. The juvenile system in place in 1985 was not structured to retain a person well beyond the age of majority for an offense as serious as aggravated murder. Any bindover hearing under the 1985 statute would have been simply a procedural step in the process of transferring Walls for prosecution as an adult. Consequently, application of the amended statutes did not increase his available punishment in any manner other than a speculative and attenuated one. Such a change in the measure of punishment is not enough to constitute an ex post facto violation.

C

**{¶42}** Our finding that Walls's claim of increased punishment is only speculative distinguishes his case from *Saucedo v. La Paz Cty. Superior Court* (Ariz.App.1997), 190 Ariz. 226, 946 P.2d 908, and *United States v. Juvenile Male* (C.A.4, 1987), 819 F.2d 468, both of which found that a retroactive application of juvenile legislation violated the Ex Post Facto Clause.

**{¶43}** At issue in *Saucedo* was an amendment to the Arizona Constitution providing that juveniles 15 years of age or older accused of certain serious offenses " 'shall be prosecuted as adults.' " Id. at 227, 946 P.2d 908, fn. 1, quoting Section 22(1), Part 2, Article IV, Arizona Constitution. Under the law prior to the amendment, Arizona, like Ohio, allowed prosecution of a juvenile in criminal court "[o]nly after a transfer decision by the juvenile court." Id. at 227, 946 P.2d 908.

**{¶44}** The Arizona Court of Appeals found that applying this provision to Saucedo for an offense committed prior to its effective date offended ex post facto principles. "By depriving [Saucedo] of eligibility for prosecution as a juvenile, it would substantially alter his range of punishment, depriving him of eligibility for probation and raising his potential length of confinement from a maximum of two and one-half years in a juvenile setting to a minimum of thirteen years in a prison for adults." Id. at 229, 946 P.2d 908. In contrast to Walls, however, Saucedo was only 15 years old at the time criminal proceedings commenced. Id. at 227, 946 P.2d 908. Thus, under Arizona's preamendment law, Saucedo had a realistic chance of remaining in the juvenile system. But because Walls was 29 years old at the time criminal proceedings commenced in this case, he had no such chance under Ohio law. Walls's mature age therefore renders *Saucedo*'s reasoning inapplicable here.

**{¶45}** The circumstances at issue in *Juvenile Male* are likewise distinguishable from the scenario in this case. In *Juvenile Male*, the defendant was accused of committing multiple murders on federal property in 1981, when he was 15 years old. At the time of the murders, federal law did not allow prosecution as an adult of any person who committed a crime at age 15; the government could prosecute the offender only as a juvenile, subjecting the offender to a maximum punishment of incarceration until the age of 21. 819 F.2d at 469, citing Sections 5032 and 5037, Title 18, U.S.Code (1982). By the time the offender in *Juvenile Male* was apprehended in 1986, however, Congress had amended the relevant statutes to allow transfer of the defendant to a district court for trial as an adult for certain crimes committed by 15-year-old offenders. Id., citing Section 5032, Title 18, U.S.Code (Supp. II 1984). The government invoked the new statute and sought to prosecute the then-20-year-old defendant for trial as an adult.

**{¶46}** The United States Court of Appeals for the Fourth Circuit held that the application of the new statute to the defendant violated the ex post facto

prohibition in Section 9, Article I of the United States Constitution.[6] Applying the third *Calder* factor, the court held that the new statute plainly imposed a greater punishment than the law in effect in 1981 because it exposed the defendant to a much more severe sentence. Id. at 470, citing *Calder*, *Beazell*, and *Weaver*, supra. The court rejected the characterization of the change as "procedural," noting that "[o]nly by closing one's eyes to the actual effect of the transfer can one label this radical increase in the applicable punishment a procedural change." Id. at 471. Despite the defendant's mature age at the time of trial, the court found itself "bound by the result Congress dictated when it drafted the law in effect in 1981—that fifteen-year-old offenders should be tried as juveniles, even if they are not charged until they reach the age of twenty." Id. at 472.

{¶47} The result in *Juvenile Male* is of no help to Walls. Under the federal law in place at the time of the *Juvenile Male* defendant's offense, there was *absolutely no possibility* that he could be tried as an adult. Thus, application of the intervening statute unquestionably subjected the defendant to a greater punishment that was not at all possible at the time of his offense. Because the new federal statute allowed for a punishment that was previously unavailable as a matter of law, there was nothing speculative about the onerous effect of retroactively applying the amendment to that defendant's case. In contrast, the Ohio law in place at the time of Walls's offense already contained a procedural mechanism for transfer to adult court, subjecting a 15-year-old (as Walls was at the time of the murder) to criminal prosecution and the full range of adult punishment. And as we have previously explained, the new legislation's removal of the bindover process—allowing for automatic jurisdiction in the common pleas court for trial as an adult—merely removed a procedural step that Walls had only a speculative and attenuated chance

---

6. Section 9, Article I of the United States Constitution prohibits Congress from passing ex post facto laws. Section 10, Article I, which is at issue in this case, extends the identical prohibition to the states.

of successfully invoking. Because a 29-year-old had no realistic change of remaining within the juvenile system under the old law, the actual effect of the statutory changes applied to Walls was not nearly as dramatic as the amendments at issue in *Juvenile Male*.

{¶48} We also reject Walls's contention that *Kent v. United States* (1966), 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, mandates his receipt of a bindover hearing. It is true that *Kent* identified the bindover procedure as a " 'critically important' action determining vitally important statutory rights of the juvenile." Id. at 556, 86 S.Ct. 1045, 16 L.Ed.2d 84. But the protections afforded by that procedure are important precisely because of the juvenile's age at the time of the proceeding. The offender in *Kent* was 16 years old; by contrast, Walls was 29 years old at the time criminal proceedings commenced and well beyond an age at which there was a need for such protection. Accordingly, our categorization of the bindover hearing as a procedural formality with respect to Walls in no way contravenes the Supreme Court's decision in *Kent.*

{¶49} We therefore hold that the application of the amended juvenile statutes to Walls did not violate the Ex Post Facto Clause. Because we find no violation of either Section 10, Article I of the United States Constitution or Section 28, Article II of the Ohio Constitution, we reject Walls's first proposition of law.

IV

{¶50} With his second proposition, Walls argues that the delay between the time of the offense and his indictment violated his due process rights. Specifically, Walls contends that he was harmed by the disappearance of evidence implicating another suspect in the crime.

{¶51} To warrant dismissal on the basis of preindictment delay, a defendant must present evidence establishing substantial prejudice. Once the defendant fulfills that burden, the state has the burden of producing evidence of a justifiable reason for the delay. *State v. Whiting* (1998), 84 Ohio St.3d 215, 217, 702 N.E.2d

1199. Thus, "the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *United States v. Lovasco* (1977), 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752.

{¶52} The determination of "actual prejudice" involves "a delicate judgment based on the circumstances of each case." *United States v. Marion* (1971), 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468. In making this assessment, courts are to consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay. *State v. Luck* (1984), 15 Ohio St.3d 150, 154, 15 OBR 296, 472 N.E.2d 1097, citing *Marion*, 404 U.S. at 326, 92 S.Ct. 455, 30 L.Ed.2d 468.

{¶53} Walls insists that the passage of time resulted in the loss of substantial exculpatory evidence. He argues that the coroner's investigator—if he had been alive to testify—could have placed the time of death during school hours rather than at 4:00 p.m. Walls also contends that missing school attendance records would have shown that he was in school on the afternoon of the murder. He further believes that unavailable witnesses could have supplied evidence implicating one Anthony Gray as the murderer. In particular, he claims that an acquaintance of Gray's, Dawn Smith, had heard Gray tell his cousin that he had killed a woman on the street where the murder took place. Walls argues that he was prejudiced even further by the death of the lead investigator because only the investigator knew why Gray was considered a suspect. Finally, Walls contends that he was prejudiced by the disappearance of specific items of evidence: (1) a tape made by a neighbor describing a person she saw entering the victim's house, (2) a faucet handle from the victim's home that had a blood stain on it, and (3) an anonymous letter that apparently discussed who committed the murder.

{¶54} For its part, the state counters that the evidence of which Walls complains was either not missing, unhelpful to Walls, or duplicative. First, although the coroner's assistant is deceased and could not testify, the Butler County

Coroner testified at length as to the time of death. And despite the missing attendance reports from individual classes, the state produced a school record showing that Walls was in school on the day of the murder. As to the evidence concerning the other suspect, police located Smith but considered her unreliable because she gave inconsistent statements. Furthermore, scientific testing revealed that a bloodstain on a "missing" pillow taken from Gray's home did not contain the victim's DNA.

{¶55} In addition to the state's substantial arguments refuting Walls's contentions, we must also consider the fingerprint evidence implicating Walls. Though Walls stated that he had never been to the victim's home, his fingerprints were found in incriminating locations around the house, including on the storm door and on items scattered about the ransacked home. Furthermore, the fingerprints found in the home did not match those of Gray, the individual who Walls claims actually committed the crime.

{¶56} Although some prejudice may have occurred from evidence lost over the years, we conclude that Walls's claims of prejudice are speculative at best. *Marion*, 404 U.S. at 326, 92 S.Ct. 455, 30 L.Ed.2d 468. Moreover, we are firmly convinced that the delay was justified. As the United States Supreme Court explained, "[T]o prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Lovasco,* 431 U.S. at 796, 97 S.Ct. 2044, 52 L.Ed.2d 752. Here, the indictment occurred only a couple of months after new computer technology made it possible to match the fingerprints at the murder scene to those of Walls. Prior to the advent of that technology, the state had no means of obtaining a match for these prints. Upon receiving the new fingerprint evidence, the state proceeded diligently to initiate proceedings against Walls. This situation is distinctly different from cases in which the state has compiled evidence but simply fails, or refuses, to take action for a substantial period. See, e.g., *Luck*, 15

Ohio St.3d 150, 15 OBR 296, 472 N.E.2d 1097. Because the delay here was justified, the 13-year hiatus between the offense and the indictment did not violate Walls's due process rights.

V

{¶57} Having found no constitutional violations, we reject both of Walls's propositions of law. The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶58} The majority opinion well states the objectionable nature of retroactive legislation and accurately sets forth the test to determine whether legislation was designed to apply retroactively and whether it is constitutional. We diverge on our conclusions.

{¶59} I dissent because former R.C. 2151.26 and 2151.011(B)(6) do not contain provisions allowing them to be applied retroactively to an offense that occurred prior to the enactment of the statutes. *State ex rel. Wehrung v. Dinkelacker* (2001), 92 Ohio St.3d 310, 311, 750 N.E.2d 154 (Pfeifer, J., dissenting). The retroactive application of R.C. 2151.26 and 2151.01(B)(6) fails on both statutory and constitutional grounds.

{¶60} First, the General Assembly has not specified that the statutes at issue should be applied retrospectively. The " 'clear indication of retroactive application' " required by *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 106, 522 N.E.2d 489, is lacking. Id. at 106, 522 N.E.2d 489, quoting *Kiser v. Coleman* (1986), 28 Ohio St.3d 259, 262, 28 OBR 337, 503 N.E.2d 753.

**{¶61}** Former R.C. 2151.011(B)(6) and 2151.23(I) were clearly designed to change the law that gave juvenile courts at least initial jurisdiction over persons apprehended after they turned 21 for crimes they committed before the age of eighteen.  R.C. 2151.011(B)(6) and 2151.23(I) achieved the sought-for change – but only for children who committed crimes during the life of those statutes.  The statutes do not reach back to acts that occurred before their effective dates.

**{¶62}** The 1997 version of R.C. 2151.011(B)(6)(c) changed the definition of "child" to exclude "[a]ny person who, while under eighteen years of age, *commits* an act that would be a felony if committed by an adult and who is not taken into custody or apprehended for that act until after the person attains twenty-one years of age." (Emphasis added.) 147 Ohio Laws, Part II, 3421-3422.  The General Assembly used the present tense "commits" in crafting the statute.  The use of the past tense, "committed," would have evidenced a clear intent by the legislature to make the statute applicable to acts committed before the effective date of the statute.  The way the statute is written encompasses *acts*, not just apprehension, that occurred while the statute was in force, not before the statute was written.

**{¶63}** Likewise, former R.C. 2151.23(I) stated:

**{¶64}** "If a person under eighteen years of age allegedly *commits* an act that would be a felony if committed by an adult and if the person is not taken into custody or apprehended for that act until after the person attains twenty-one years of age, the juvenile court does not have jurisdiction to hear or determine any portion of the case charging the person with committing that act." (Emphasis added.), 146 Ohio Laws, Part II, 2054.

**{¶65}** Again, the use of the present tense indicates that the statute applies to acts that occur over the life of the statute.  The law tells persons under 18 years old that if they commit a felony but avoid apprehension until after age 21, they will face disposition of their case through the criminal court.  It alerts persons under eighteen years of age to the consequences of not facing responsibility for their

actions in a timely manner. The statute does not speak to persons over 21 who have already committed a felony as a juvenile before the statute was enacted. Those persons would be unable to conform their behavior to the statute. Under the majority's construction, however, people over the age of 21 are simply informed that under this new statute they must now face new and different consequences for their previous acts. That interpretation is untenable—the way the statute is written requires both the commission of the felonious act and the apprehension to occur as of the effective date. The General Assembly could clearly have written the statute otherwise, but did not.

{¶66} Even if the statutes did feature clear evidence of intended retroactivity, such an application would be unconstitutional. A statute is unconstitutionally retroactive pursuant to Section 28, Article II of the Ohio Constitution "if it impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction." *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 354, 721 N.E.2d 28.

{¶67} In finding that the statutes are remedial, rather than substantive, the majority ignores the important distinctions between juvenile and criminal courts. This court's recognition in *In re Anderson* (2001), 92 Ohio St.3d 63, 748 N.E.2d 67, syllabus, that a juvenile court proceeding is a civil action, not a criminal one, demonstrates that the differences are substantive. The dichotomy between juvenile and criminal courts exists because we understand the important differences between children and adults, not just in their ultimate disposition once they are adjudged, but also in the motivations behind their behaviors.

{¶68} Whenever the juvenile offender is ultimately apprehended, at the time of the crime or after he turns twenty-one, the fact remains that a *child* committed the offense. Who of us is the same person we were as a teenager? Who of us is the person we aspired to be as a teenager? Our juvenile laws and courts take into account that we are eminently changeable and reformable at that age. The

juvenile court structure recognizes our undeveloped judgment capabilities, our nonappreciation of the future, and the temporary and evolving nature of our influences. The 1997 versions of R.C. 2151.011(B)(6) and 2151.23(I) keep a court from viewing Walls as he was when the crime was committed—as a child. And that is substantive.

**{¶69}** Ohio's juvenile court system at the time Walls committed his crimes was not naïve as to serious juvenile offenders. Pursuant to the version of R.C. 2151.26(A) in place at the time Walls committed his offenses, if the aims of the juvenile court system could not be met as to a specific child, or if the child provided an extraordinary threat to the community if released from custody too soon, then bindover to adult criminal court was appropriate. See 140 Ohio Laws, Part I, 585-586. Bindover may very well have been appropriate in the case of Walls. But he at least deserved his threshold chance before the juvenile court. More important, there are others out there who probably deserve it more.

_____

Robin N. Piper, Butler County Prosecuting Attorney, and Daniel G. Eichel, Assistant Prosecuting Attorney, for appellee.

Law Offices of Scott J. Frederick, Scott J. Frederick and Kristen L. Sphar, for appellant.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Rebecca L. Collins, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys' Association.

David H. Bodiker, Ohio Public Defender, and T. Kenneth Lee, Assistant Public Defender, urging reversal for amicus curiae Office of the Ohio Public Defender.

_____