THE STATE OF OHIO, APPELLEE, *v.* WARREN, APPELLANT.

[Cite as *State v. Warren,* 118 Ohio St.3d 200, 2008-Ohio-2011.]

(No. 2006–2148—Submitted February 6, 2008—Decided May 6, 2008.)

O'CONNOR, J.

{¶ 1} This appeal requires us to consider the sole issue of whether due process is violated when the defendant receives a mandatory term of life imprisonment for forcible rape of a victim under age 13 when the defendant was 15 years of age at the time of the offense but not prosecuted until he had passed the age of 21. For the reasons that follow, we determine that principles of due process are not violated in this situation. We therefore affirm the judgment of the court of appeals and uphold the mandatory life sentence for rape imposed in this case.

I

{¶ 2} On November 9, 2004, defendant-appellant, Reginald Warren, was indicted on 12 counts of rape, each with a force specification; 12 counts of felonious sexual penetration, each with a force specification; 12 counts of gross sexual imposition; and 12 counts of kidnapping. Each count included a separate violence specification, and each count specifically noted that the victim was a child under age 13.

{¶ 3} The indictment stated the dates of the offenses as June 1988 to August 1988, meaning that the case was governed by the law in effect in 1988.[1] Warren was 15 years old at that time. The indictment stated that the female victim was born on April 8, 1979, making her nine years old during the dates in question.

{¶ 4} After Warren waived his right to a jury, the case was tried to the court. Warren moved to dismiss all charges, arguing that the preindictment delay was

---

1. The extensive revisions to criminal statutes that were enacted in Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, effective July 1, 1996, are inapplicable to this case. See *State v. Rush* (1998), 83 Ohio St.3d 53, 57, 697 N.E.2d 634, and paragraph two of the syllabus (noting and giving effect to General Assembly's stated intent that the amended sentencing provisions of Am.Sub.S.B. No. 2 apply only to crimes committed on or after July 1, 1996).

unjustified and prejudicial and that the statute of limitations barred prosecution. The motion was denied.

{¶ 5} At trial, the victim testified that during the summer of 1988, when she was nine years old, she and her younger sister stayed at the home of a neighbor and family friend, James Thomas, while their mother was at work. The victim testified that Thomas was physically disabled and that because he was unable to freely move around the house, he sat in a chair in the front room most of the time.

{¶ 6} Warren often did yard work and other tasks around Thomas's house that summer. In recounting the first incident in which Warren abused her, the victim stated that he came into an upstairs bedroom while she was playing and kissed her, then pulled up her shirt, fondled her breasts, and sucked on them. In a number of later incidents, Warren held her down, pulled down her shorts, and inserted his finger into her vagina, and also sometimes partially inserted his penis. In addition to those acts, Warren sometimes would rub his penis on her vagina without inserting it.

{¶ 7} The victim estimated that Warren had digitally penetrated her 11 or 12 different times and had placed his penis into her vagina about eight or nine different times. She also detailed incidents in which Warren attempted to force her to perform oral sex and in which he tried to insert a hairbrush handle into her vagina, with the handle penetrating about two inches. The victim testified that Warren molested her for a period of about two months.

{¶ 8} The victim testified that she tolerated the molestation and did not reveal it to others because Warren repeatedly threatened that if she did not cooperate, he would kill or hurt her, her family members, and her friends. Eventually, in response to a speculative question from her mother as to whether Warren "had ever done anything" to her, the victim, after first answering no, told her mother that Warren "messes with me." The victim refused to give her mother any specific details because she was fearful of Warren's threats. The victim's mother testified that she was unsure of what actually had taken place and told Thomas only that she was not comfortable with Warren being around her young daughters. Thomas took steps to ensure that Warren no longer did work at Thomas's house, and no more incidents occurred.

{¶ 9} The victim testified that she did not report the molestation to the police until 2004, when she saw a newspaper article in the Cleveland Plain Dealer stating that Warren had been sentenced to a prison term for sexually assaulting a nine-year-old girl. At that time, the victim went to authorities and gave a statement to a police detective, leading to the investigation that resulted in Warren's prosecution.

{¶ 10} After hearing testimony and arguments, the trial court dismissed some of the charges and specifications upon Warren's motion for acquittal under Crim.R. 29. Warren did not testify and presented no witnesses. The trial court subsequently found Warren guilty of eight counts of rape as charged, four counts of gross sexual imposition as charged, eight counts of gross sexual imposition without the violence specifications, and 12 counts of kidnapping as charged.

{¶ 11} The trial court held sexual-predator and sentencing hearings and adjudged Warren to be a sexual predator. The court sentenced Warren under the law in effect in 1988 to life sentences on each of the rape convictions, to terms of four to ten years' imprisonment on each of the convictions for gross sexual imposition with a violence specification, to terms of two years' imprisonment on each of the other gross sexual imposition convictions, and to terms of 15 to 25 years' imprisonment on each of the kidnapping convictions.[2] The trial court ordered some of the terms to run consecutively to others and some to run concurrently.[3]

{¶ 12} Of particular relevance to this appeal is former R.C. 2907.02(B), which provided:

{¶ 13} "Whoever violates this section is guilty of rape, an aggravated felony of the first degree. If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life."[4] 141 Ohio Laws, Part II, 4481.

{¶ 14} Because former R.C. 2907.02(A)(1)(b) provided that rape is sexual conduct with a person "less than thirteen years of age," and because Warren was also found guilty of the force specifications accompanying the rape counts, the trial court was statutorily required to impose life sentences for the rape convictions and had no discretion to impose lesser sentences. See *State v. Vaughn* (1995), 106 Ohio App.3d 775, 783–784, 667 N.E.2d 82; *State v. Gladding* (1990), 66 Ohio App.3d 502, 512–513, 585 N.E.2d 838.

---

2. Warren's parole eligibility is determined by former R.C. 2967.13 as it existed at the time of the offenses. 140 Ohio Laws, Part I, 607.

3. The trial court additionally ordered that the sentences imposed in this case be served consecutively to a nine-year prison term that Warren had earlier received for unrelated convictions for kidnapping and gross sexual imposition in a different case. The earlier offenses occurred in 2003, involving a female victim under 13 years of age.

4. Although current R.C. 2907.02(B) is substantially different from the version of the statute at issue in this case, the current statute continues to provide for a mandatory life sentence for rape of a minor in certain situations.

{¶ 15} The court of appeals affirmed in part and reversed in part. The court found insufficient evidence to support a number of the convictions, but affirmed Warren's conviction and mandatory life sentence for one of the counts of rape. The court of appeals also affirmed his convictions and sentences for four counts of gross sexual imposition and five counts of kidnapping. *State v. Warren*, 168 Ohio App.3d 288, 2006-Ohio-4104, 859 N.E.2d 998.

{¶ 16} The court of appeals rejected Warren's argument that his due process rights were violated by the 16–year delay between the offenses and the indictment, reasoning that the minor victim's delay in reporting the crimes to police officers could not be attributed to the state. Id. at ¶ 12. The court of appeals also found no merit to Warren's argument that the statute of limitations was unconstitutionally applied to him and that his prosecution should have been foreclosed because of the delay. Id. at ¶ 13–15. The court of appeals recognized that the running of the statute of limitations was tolled until 1997 when the victim reached the age of majority. Id. at ¶ 14.

{¶ 17} Warren's seventh assignment of error in the court of appeals argued that his constitutional rights were violated by the application of two specific statutes to his situation—former R.C. 2907.02, which mandated a life sentence for rape in these circumstances, and R.C. 2152.02(C)(3), which provides that "[a]ny person who, while under eighteen years of age, commits an act that would be a felony if committed by an adult and who is not taken into custody or apprehended for that act until after the person attains twenty-one years of age is not a child in relation to that act."

{¶ 18} Warren argued that the trial court erred in failing to consider that he was only 15 at the time of the offenses. As he stated in his brief, "Because the mandatory life sentence required by R.C. 2907.02 does not allow an offender's minority status to be considered in mitigation of his sentence, that section and R.C. 2151.02(C)(3) [sic, 2152.02(C)(3)], which provides that a child apprehended after age 21 must be prosecuted as an adult are unconstitutional in their application to him." The court of appeals found no merit to that claim.

{¶ 19} We accepted for review only Warren's Fifth Proposition of Law, see 113 Ohio St.3d 1511, 2007-Ohio-2208, 866 N.E.2d 511, which states: "R.C. 2907.02 and R.C. 2151.02(C)(3) [sic, 2152.02(C)(3)] were unconstitutionally applied to appellant, who was a minor at the time of the alleged crime; thus appellant's right to due process and a fair trial was denied when he was sentenced as an adult for crimes alleged to have been committed when he was only fifteen years old."

{¶ 20} The state did not cross-appeal from the court of appeals' reversal of some of the convictions. As a result, the proposition accepted for review implicates only the mandatory life sentence for the one rape conviction that was

upheld by the court of appeals. None of the other convictions or sentences are at issue in this appeal.

## II

{¶ 21} Our analysis begins with the well-established rule that statutes enjoy a strong presumption of constitutionality. *State v. Carswell,* 114 Ohio St.3d 210, 2007-Ohio-3723, 871 N.E.2d 547, ¶ 6; *State v. Collier* (1991), 62 Ohio St.3d 267, 269, 581 N.E.2d 552. A statute will be upheld unless the challenger can meet the burden of establishing beyond a reasonable doubt that the statute is unconstitutional. *State v. Tooley,* 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, ¶ 29; *State v. Collier,* 62 Ohio St.3d at 269, 581 N.E.2d 552.

{¶ 22} Because Warren argues that the relevant statutes are unconstitutional as applied to his particular situation, he "bears the burden of presenting clear and convincing evidence of a presently existing state of facts that make the statutes unconstitutional and void when applied to those facts." *Harrold v. Collier,* 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 38, citing *Belden v. Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629, paragraph six of the syllabus.

{¶ 23} The court of appeals interpreted Warren's seventh assignment of error as arguing that his sentence of life imprisonment is "cruel and unusual punishment" under the Eighth Amendment to the United States Constitution, based on Warren's citations of *Roper v. Simmons* (2005), 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1, and *Thompson v. Oklahoma* (1988), 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702, both of which considered whether the execution of juvenile offenders who commit capital crimes was unconstitutional on that ground. Based on that understanding of this issue, the court of appeals resolved it by stating:

{¶ 24} "The life sentence imposed here was mandated by statute. 'Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history.' *Harmelin v. Michigan* (1991), 501 U.S. 957, 994–995, 111 S.Ct. 2680, 115 L.Ed.2d 836. Consideration of mitigating factors in sentencing (including the defendant's chronological age) is not constitutionally required except when the death penalty is imposed. Id.; *Rice v. Cooper* (C.A.7, 1998), 148 F.3d 747, 752.

{¶ 25} "Outside the death penalty context, the Eighth Amendment does not require strict proportionality between crime and sentence but forbids only extreme sentences that are grossly disproportionate to the crime. [*Harmelin* ] at 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836. We cannot say that a sentence of life imprisonment (with possibility of parole) is grossly disproportionate to the crime of rape of a child under the age of 13. Therefore, we overrule the seventh

assignment of error." 168 Ohio App.3d 288, 2006-Ohio-4104, 859 N.E.2d 998, ¶ 28–29.

{¶ 26} Warren now makes clear that the court of appeals misinterpreted his argument. His essential position is that in the specific circumstances of his case, the interplay of R.C. 2907.02 and 2152.02(C)(3) violates his due process rights and right to a fair trial under the United States and Ohio Constitutions. His challenge is based principally on Sections 10 and 16, Article I of the Ohio Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution, and, to a lesser extent, on other constitutional provisions. Warren specifically clarifies that he is not arguing that his life sentence violates the Eighth Amendment in light of *Roper v. Simmons*.

{¶ 27} We therefore construe Warren's proposition of law as asserting that the mandatory life sentence for rape in his case violates basic due process principles of fundamental fairness. He urges us to hold that the challenged statutes cannot apply to him, to remand this cause to the trial court for resentencing on the rape count, and to direct that court to consider that Warren was a minor at the time of the offenses. In short, Warren asks us to instruct the trial court to disregard former R.C. 2907.02's clear requirement of a mandatory life sentence. This we cannot do.

{¶ 28} As we recently noted in *In re C.S.,* 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 80: " 'For all its consequence, "due process" has never been, and perhaps can never be, precisely defined. * * * [D]ue process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria [ & Restaurant ] Workers [ Union ] v. McElroy* [1961], 367 U.S. 886, 895 [81 S.Ct. 1743, 6 L.Ed.2d 1230]. Rather, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.' *Lassiter v. Dept. of Social Servs. of Durham Cty., North Carolina* (1981), 452 U.S. 18, 24–25, 101 S.Ct. 2153, 68 L.Ed.2d 640." (Brackets and ellipsis sic.)

{¶ 29} Warren specifically targets R.C. 2152.02(C)(3), which requires that because Warren was not apprehended until after he had reached 21 years of age, he cannot be considered "a child" in relation to the offenses in this case. Two other statutes, not cited by Warren, are also relevant to the specific inquiry and reiterate the clear legislative intent underlying R.C. 2152.02(C)(3) that once an offender reaches 21 years of age, he is to be prosecuted as an adult, regardless of

his age when the acts were committed.   See R.C. 2151.23(I) and 2152.12(J).[5]

{¶ 30} Although Warren does not assert that his life sentence constitutes cruel and unusual punishment under *Roper v. Simmons* or *Thompson v. Oklahoma,* those cases and others involving juvenile offenders are central to his primary argument.   Warren contends that those decisions recognized that juvenile offenders are entitled to special protections and asserts, "Due Process requires that in ascertaining an offender's culpability for a crime, the trial court take account of the offender's minority status at the time of the offense."

{¶ 31} In support of his argument, Warren refers to the following passage from Justice Stevens's plurality opinion in *Thompson* :

{¶ 32} "It is generally agreed 'that punishment should be directly related to the personal culpability of the criminal defendant.'   *California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987) (O'Connor, J., concurring). There is also broad agreement on the proposition that adolescents as a class are less mature and responsible than adults.   We stressed this difference in explaining the importance of treating the defendant's youth as a mitigating factor in capital cases:

{¶ 33} " 'But youth is more than a chronological fact.   It is a time and condition of life when a person may be most susceptible to influence and to psychological damage.   Our history is replete with laws and judicial recognition that minors,

---

5.   {¶ a} R.C. 2151.23(I) provides:

   {¶ b} "If a person under eighteen years of age allegedly commits an act that would be a felony if committed by an adult and if the person is not taken into custody or apprehended for that act until after the person attains twenty-one years of age, the juvenile court does not have jurisdiction to hear or determine any portion of the case charging the person with committing that act.   In those circumstances, divisions (A) [mandatory transfer] and (B) [discretionary transfer] of section 2152.12 of the Revised Code do not apply regarding the act, and the case charging the person with committing the act shall be a criminal prosecution commenced and heard in the appropriate court having jurisdiction of the offense as if the person had been eighteen years of age or older when the person committed the act.   All proceedings pertaining to the act shall be within the jurisdiction of the court having jurisdiction of the offense, and that court has all the authority and duties in the case that it has in other criminal cases in that court."

   {¶ c} R.C. 2152.12(J) provides:

   {¶ d} "If a person under eighteen years of age allegedly commits an act that would be a felony if committed by an adult and if the person is not taken into custody or apprehended for that act until after the person attains twenty-one years of age, the juvenile court does not have jurisdiction to hear or determine any portion of the case charging the person with committing that act.   In those circumstances, divisions (A) [mandatory transfer] and (B) [discretionary transfer] of this section do not apply regarding the act, and the case charging the person with committing the act shall be a criminal prosecution commenced and heard in the appropriate court having jurisdiction of the offense as if the person had been eighteen years of age or older when the person committed the act. All proceedings pertaining to the act shall be within the jurisdiction of the court having jurisdiction of the offense, and that court has all the authority and duties in the case as it has in other criminal cases in that court."

especially in their earlier years, generally are less mature and responsible than adults. Particularly "during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment" expected of adults. *Bellotti v. Baird*, 443 U.S. 622, 635, 99 S.Ct. 3035, 3043, 61 L.Ed.2d 797 (1979).' *Eddings v. Oklahoma*, 455 U.S. 104, 115–116, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982) (footnotes omitted).

{¶ 34} "To add further emphasis to the special mitigating force of youth, Justice Powell [in *Eddings*] quoted the following passage from the 1978 Report of the Twentieth Century Fund Task Force on Sentencing Policy Toward Young Offenders:

{¶ 35} " ' "[A]dolescents, particularly in the early and middle teen years, are more vulnerable, more impulsive, and less self-disciplined than adults. Crimes committed by youths may be just as harmful to victims as those committed by older persons, but they deserve less punishment because adolescents may have less capacity to control their conduct and to think in long-range terms than adults. Moreover, youth crime as such is not exclusively the offender's fault; offenses by the young also represent a failure of family, school, and the social system, which share responsibility for the development of America's youth." ' 455 U.S., at 115, n. 11, 102 S.Ct. [at] 877, n. 11, [71 L.Ed.2d 1, n. 11]." *Thompson*, 487 U.S. at 834, 108 S.Ct. 2687, 101 L.Ed.2d 702.

{¶ 36} Warren notes that the Supreme Court in *Roper* expressed similar sentiments. For example, the court stated in that case, 543 U.S. at 570, 125 S.Ct. 1183, 161 L.Ed.2d 1, quoting *Johnson v. Texas* (1993), 509 U.S. 350, 368, 113 S.Ct. 2658, 125 L.Ed.2d 290: " '[T]he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside.' " The *Roper* court also remarked: "Whether viewed as an attempt to express the community's moral outrage or as an attempt to right the balance for the wrong to the victim, the case for retribution is not as strong with a minor as with an adult. Retribution is not proportional if the law's most severe penalty is imposed on one whose culpability or blameworthiness is diminished, to a substantial degree, by reason of youth and immaturity." Id. at 571, 125 S.Ct. 1183, 161 L.Ed.2d 1.

{¶ 37} The state asserts that Warren's argument is based on an "overly broad reading of *Roper* " and its predecessors and further asserts—with some justification—that *Roper* is read most appropriately, in context, as a narrow examination of the propriety of executing juveniles who have committed capital crimes.

{¶ 38} We recognize that Warren's argument centers on some broad principles from *Roper*, *Thompson*, and other cases that do transcend the Eighth Amendment. See, e.g., *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177,

at ¶ 82, in which we cited *Roper*, 543 U.S. at 569–570, 125 S.Ct. 1183, 161 L.Ed.2d 1, for the proposition that "[a] juvenile typically lacks sufficient maturity and good judgment to make good decisions consistently and [to] sufficiently foresee the consequences of his actions." See also *In re D.S.*, 111 Ohio St.3d 361, 2006-Ohio-5851, 856 N.E.2d 921, ¶ 8–11 (quoting *Roper*, 543 U.S. at 569–570, 125 S.Ct. 1183, 161 L.Ed.2d 1, to list distinctions separating juveniles from adult offenders).

{¶ 39} However, we determine that our decision in *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, so essentially undermines Warren's position that he cannot prevail on his claim that his mandatory life sentence violates due process principles of fundamental fairness.

{¶ 40} In *Walls*, the defendant was indicted in 1998 for an aggravated murder that occurred in 1985 when the defendant was 15 years old. Although Walls was a minor at the time of the offense, the statutes in effect at the time of his indictment, which were enacted in 1997, allowed the state to try him as an adult.[6] Walls moved to dismiss his indictment, arguing that the 1985 version of R.C. 2151.011(B)(1), under which he could not be tried as an adult until the juvenile court had first bound him over to the general division of the court of common pleas for trial, should instead control his case. The trial court denied the motion. Walls was tried as an adult, convicted of aggravated murder, and sentenced to life imprisonment. The court of appeals affirmed.

{¶ 41} Walls urged this court to void his conviction, arguing that the common pleas court lacked subject-matter jurisdiction because the statutes allowing for his trial as an adult were unconstitutionally retroactive as applied. In affirming, this court held that the application of the jurisdictional statutes did not violate the Retroactivity Clause, Section 28, Article II of the Ohio Constitution, or the Ex Post Facto Clause, Section 10, Article I of the United States Constitution. *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 49.

{¶ 42} As to the Retroactivity Clause, this court first determined that the General Assembly intended the 1997 amendments to apply retrospectively be-

---

6. {¶ a} The applicable statutes were former R.C. 2151.011(B)(6)(c), which is now codified in identical language as R.C. 2152.02(C)(3) as challenged in the case sub judice, and former R.C. 2151.23(I), which was very similar to the versions of R.C. 2151.23(I) and 2152.12(J) at issue in the case sub judice. The former statutes were both enacted in 1997. See 147 Ohio Laws, Part II, 3421–3422; 146 Ohio Laws, Part II, 2054.

{¶ b} Am.Sub.S.B. No. 179, effective January 1, 2002, 148 Ohio Laws, Part IV, 9447, significantly revised many juvenile statutes and reorganized the Revised Code by moving delinquency into a new chapter, R.C. Chapter 2152. Juv.R. 2(D) was amended effective July 1, 2001, to reflect that the definition of "child" that formerly appeared in R.C. 2151.011 now appears in R.C. 2152.02. See 148 Ohio Laws, Part IV, 9536; Staff Notes to July 1, 2001 amendment to Juv.R. 2. A different definition of "child" now appears in R.C. 2151.011(B)(5) and has no relevance to this case. 148 Ohio Laws, Part IV, 9476.

cause the amendments "made the age of the offender *upon apprehension* the touchstone of determining juvenile-court jurisdiction without regard to whether the alleged offense occurred prior to the amendments' effective date." (Emphasis sic.) Id. at ¶ 14.

{¶ 43} We then proceeded to consider whether the statutes were substantive or remedial for purposes of retroactivity analysis. We rejected Walls's argument that the 1997 statutory changes were substantive in that they deprived him of his vested right to a bindover proceeding:

{¶ 44} "The 1997 changes to R.C. Chapter 2151 did not impair any of Walls's vested rights within the meaning of our retroactivity jurisprudence. Although the 1997 amendments to the juvenile statutes allowed criminal prosecution without the bindover proceeding required under the 1985 law, we cannot characterize this change as anything other than remedial. Even under the law in effect in 1985, Walls was subject to criminal prosecution in the general division of a court of common pleas if the juvenile court made certain determinations specified by statute. See former R.C. 2151.26(A) and (E), 140 Ohio Laws, Part I, 585–586. Thus, under either the 1985 law or the 1997 law, Walls was on notice that the offense he allegedly committed could subject him to criminal prosecution as an adult in the general division of the court of common pleas. The 1997 law merely removed the procedural prerequisite of a juvenile-court proceeding. Even though they may have an occasional substantive effect on past conduct, 'it is generally true that laws that relate to procedures are ordinarily remedial in nature.'" *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 17.

{¶ 45} Accordingly, we held that "application of the juvenile statutes in place at the time the state commenced criminal proceedings in this case did not impair Walls's substantive rights" within the meaning of the test set forth in *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, and other cases interpreting Section 28, Article II. *Walls* at ¶ 19.

{¶ 46} As to the Ex Post Facto Clause, this court dismissed Walls's claim that the 1997 statutes increased the measure of punishment for his conduct as "speculative at best" and noted that although "Walls perhaps remained eligible for retention within the jurisdiction of the juvenile court under a technical reading of the old statutes, the practical reality is that Walls had virtually no chance of being kept in the juvenile system." Id. at ¶ 31. We reviewed the statutory criteria in place in 1985 for deciding whether to transfer a child to common pleas court for trial as an adult and concluded that there was "no basis to conclude that Walls had any realistic chance of remaining in the juvenile system under the 1985 law." Id. at ¶ 38.

{¶ 47} We further noted: "Notwithstanding the broad degree of discretion afforded to juvenile courts in bindover decisions, see *State v. Watson* (1989), 47

Ohio St.3d 93, 95–96, 547 N.E.2d 1181, the inherent limitations on the juvenile system under the law in place in 1985 convince us that the juvenile court would have had virtually no discretion to retain jurisdiction in Walls's case because of his mature age. The juvenile system in place in 1985 was not structured to retain a person well beyond the age of majority for an offense as serious as aggravated murder. Any bindover hearing under the 1985 statute would have been simply a procedural step in the process of transferring Walls for prosecution as an adult. Consequently, application of the amended statutes did not increase his available punishment in any manner other than a speculative and attenuated one. Such a change in the measure of punishment is not enough to constitute an ex post facto violation." Id., 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 41.

{¶ 48} *Walls* is not directly on point with this case because it did not involve a due process argument based upon principles of fundamental fairness. However, the similarities between the situation in this case and in *Walls* are substantial, and the essential principles that emerge from *Walls* make it impossible for Warren to prevail on his due process argument.

{¶ 49} Most important, as in *Walls*, the application of the statutes requiring that Warren be tried as an adult in common pleas court (in this case, R.C. 2152.02(C)(3), 2151.23(I), and 2152.12(J)) cannot be viewed as affecting a substantive right because under either the 1985 bindover law or the 1997 law that was applied to him, Warren was on notice that the offense[s] he allegedly committed could subject him to criminal prosecution as an adult in the general division of the court of common pleas. *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 17.

{¶ 50} In addition, *Walls* stands squarely in the way of any argument that Warren might make about the lack of a bindover hearing in his case, because although Warren "perhaps remained eligible for retention within the jurisdiction of the juvenile court under a technical reading of the old statutes, the practical reality is that [he] had virtually no chance of being kept in the juvenile system." *Walls*, at ¶ 31. As in *Walls*, any bindover hearing under the statute that was in place in 1988 would have been simply a procedural step in the process of transferring Warren for prosecution as an adult. *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 41.

{¶ 51} Warren does not explicitly argue that he was prejudiced by the absence of a bindover hearing or that the juvenile court should have retained jurisdiction over his case. Instead, he claims to have been prejudiced by the trial court's inability to consider his age at the time of the offenses in sentencing him for rape. Warren argues that he would have received more favorable treatment if he had been charged with rape while still a juvenile and that that favorable treatment should extend to the rape conviction in this case. Those arguments are signifi-

cantly undercut by *Walls,* in which this court held that no substantive rights are affected in this situation. Id. at ¶ 19.

{¶ 52} In *State v. Schaar,* Stark App. No. 2003CA00129, 2004-Ohio-1631, 2004 WL 626815, the defendant argued that his conviction for gross sexual imposition violated constitutional guarantees of fundamental fairness because he committed the offense while he was a juvenile, but prosecution did not commence until he was 22 years old, and he was prosecuted as an adult. In rejecting that argument, the Fifth District, at ¶ 27, noted that this court in *Walls* "specifically held that changing the jurisdiction from the juvenile to the general division of the common pleas court did not involve any substantive right. Thus, appellant's substantive due process rights were not violated." The *Schaar* court properly interpreted the effect of *Walls* on a situation with some parallels to that of the present case.

{¶ 53} Warren additionally argues that R.C. 2152.02(C)(3) violates due process in his situation because it allowed the victim "unfettered power" to delay prosecution until after his 21st birthday. Warren asserts that the victim made an "unjustified decision" to delay reporting this case to authorities and that in the meantime, his "sentencing exposure" arbitrarily increased even though the delay was not his fault. We find this argument unfounded for several reasons.

{¶ 54} First, the record contains no indications that the victim delayed this prosecution so that Warren could be charged as an adult instead of a juvenile and thereby face an increased penalty. To the contrary, the record establishes that the victim refrained from telling anyone about the incidents because Warren had threatened her and others with harm and that she later tried to put the incidents behind her and deal with them internally. It was only when she read the 2004 newspaper article that she developed the resolve to come forward. In these circumstances, the victim's delay in reporting the molestation could hardly be termed "unjustified."

{¶ 55} Second, this argument is in substantial part based on underlying claims of prejudicial preindictment delay (see *Walls,* 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 50–56) and on the improper tolling of the statute of limitations. Because we declined to review Warren's propositions of law on these issues, this argument is at least arguably beyond the scope of this appeal.

{¶ 56} Third, to the extent that this argument supports the proposition of law we agreed to review, it must fail under *Walls.* Warren's sentencing exposure did not arbitrarily increase, because the application of the relevant juvenile statutes to him "did not increase his available punishment in any manner other than a speculative and attenuated one." Id. at ¶ 41.

{¶ 57} Warren asserts the further secondary argument that his mandatory life sentence for rape is unfair because it is disproportionate to sentences imposed on "similarly situated offenders"—those juveniles who are charged with rape shortly

after the offense is committed, while they are still juveniles, and who are not bound over for trial. *Walls* is dispositive of this argument as well. Warren's vested rights were not impaired because under the juvenile statutes in effect when he committed his offenses, he was always subject to criminal prosecution as an adult. Id., 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 17. Warren is not "similarly situated" to a juvenile who is charged with rape and not bound over for a trial; therefore, his sentence need not be proportionate to a sentence received by such an offender.

### III

{¶ 58} For all the foregoing reasons, Warren does not demonstrate that his rights to due process and fundamental fairness were violated by the application of the challenged statutes to him as they are written to impose a mandatory life sentence for rape. Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

Moyer, C.J., and Cupp, J., concur.

Lundberg Stratton, O'Donnell, and Lanzinger, JJ., concur in judgment only.

Pfeifer, J., dissents.

------

**Lanzinger, J., concurring in judgment only.**

{¶ 59} The sole issue accepted by this court for resolution confines us, I believe, to affirming the court of appeals. Even if we were to accept Reginald Warren's arguments regarding due process and fundamental fairness, we cannot order the trial court to consider his status as a juvenile to be a mitigating sentencing factor because former R.C. 2907.02(B) provided that a defendant convicted of forcible rape of a child under 13 receives a mandatory life sentence. 141 Ohio Laws, Part II, 4481. The General Assembly did not specify that youth could be considered to mitigate sentencing as it had, for example, in former R.C. 2929.04(B)(4) with respect to capital cases.[7] 139 Ohio Laws, Part I, 1, 16.

{¶ 60} This case is troublesome on the facts. In 2004, Reginald Warren was indicted, tried, convicted, and sentenced for a 1988 forcible rape of a child under 13, based solely on the testimony of the complaining witness and without any physical evidence. In 1988, he was 15 years old and subject to adjudication in juvenile court; 17 years later, he received a mandatory life sentence as an adult. Of all the issues raised—preindictment delay, extension and tolling of the statute

------

7. The current version of R.C. 2929.04(B)(4) also allows an offender's youth to be considered in capital cases.

of limitations, cruel and unusual punishment, and Warren's conviction as an adult for a crime committed when he was a juvenile—only the last issue, whether two statutes were applied to deprive him of due process and fundamental fairness, was accepted for consideration by this court.

{¶ 61} I join in the sentiments expressed by Justice Pfeifer, dissenting in *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 58–69, with respect to the unconstitutional retroactive application of statutes similar to those at issue in this case, and if we were not bound to follow the precedent established in *Walls*, I would hold that juveniles who committed offenses in 1988 are subject to juvenile penalties only. R.C. 2152.02(C)(3) provides that "[a]ny person who, while under eighteen years of age, *commits an act that would be a felony* if committed by an adult and who is not taken into custody or apprehended for that act until after the person attains twenty-one years of age is not a child in relation to that act." (Emphasis added.)

{¶ 62} Referring to the same phrase in former R.C. 2151.23(I), which automatically bound over adults to the criminal court for offenses committed as juveniles, Justice Pfeifer explained, "[T]he use of the present tense ['commits an act'] indicates that the statute applies to acts that occur over the life of the statute. The law tells persons under 18 years old that if they commit a felony but avoid apprehension until after age 21, they will face disposition of their case through the criminal court. It alerts persons under eighteen years of age to the consequences of not facing responsibility for their actions in a timely manner. *The statute does not speak to persons over 21 who have already committed a felony as a juvenile before the statute was enacted.* Those persons would be unable to conform their behavior to the statute." (Emphasis added.) *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 65 (Pfeifer, J., dissenting).

{¶ 63} Warren committed the offense in 1988. R.C. 2152.02(C)(3) was enacted in 1997. Until 2002, when the "serious youthful offender" laws became effective, creating blended sentences, see R.C. 2152.13(D), a juvenile who committed forcible rape of a child under ten would have faced either confinement until 21 as a juvenile or a bindover to adult court. If Warren had been charged and convicted while still a juvenile, he would not have been automatically sentenced to life in prison and, although subject to bindover, could have disputed his disposition as an adult and have forced the state to demonstrate that he could not be rehabilitated within the juvenile system. Retroactivity, however, is no longer an open issue and cannot be the basis for finding the statutes unconstitutional as applied in this case. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829.

{¶ 64} Former R.C. 2907.02(B), the statute that has been applied to Warren, specified a mandatory life sentence and did not allow for the consideration of a

defendant's age. 141 Ohio Laws, Part II, 4481. The current version of R.C. 2907.02(B), which became effective January 1, 2008, does take youth into consideration for some rape offenses: "If an offender is convicted of or pleads guilty to a violation of division (A)(1)(b) of this section [rape of a child under 13], if the offender was less than sixteen years of age at the time the offender committed the violation of that division, and if the offender during or immediately after the commission of the offense did not cause serious physical harm to the victim, the victim was ten years of age or older at the time of the commission of the violation, and the offender has not previously been convicted of or pleaded guilty to a violation of this section or a substantially similar existing or former law of this state, another state, or the United States, the court shall not sentence the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code, and instead the court shall sentence the offender as otherwise provided in this division."

{¶ 65} Thus, even under current law allowing sentencing mitigation for the youth of an offender, Warren would still be subject to a term of life imprisonment without parole, because his victim was younger than ten at the time of the offense. If former R.C. 2907.02(B) had allowed the sentencing court to consider Warren's status as a juvenile when the crime was committed, I would vacate the sentence and remand to the trial court for resentencing. But because the General Assembly had not provided in former R.C. 2907.02(B) that youth could be mitigating, I concur in judgment only.

LUNDBERG STRATTON and O'DONNELL, JJ., concur in the foregoing opinion.

---

PFEIFER, J., dissenting.

{¶ 66} I dissented in *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 58–69, and dissent today. The life sentence imposed *automatically* upon the defendant here violates due process principles of fundamental fairness. The sentence ignores this state's distinctions between how it treats juveniles and how it treats adults. Those distinctions emanate from our state's and nation's longstanding principles regarding fairness in dealing with children:

{¶ 67} "The dichotomy between juvenile and criminal courts exists because we understand the important differences between children and adults, not just in their ultimate disposition once they are adjudged, but also in the motivations behind their behaviors.

{¶ 68} "Whenever the juvenile offender is ultimately apprehended, at the time of the crime or after he turns twenty-one, the fact remains that a *child* committed the offense. Who of us is the same person we were as a teenager? Who of us is the person we aspired to be as a teenager? Our juvenile laws and courts take

into account that we are eminently changeable and reformable at that age. The juvenile court structure recognizes our undeveloped judgment capabilities, our nonappreciation of the future, and the temporary and evolving nature of our influences." *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 67–68 (Pfeifer, J., dissenting).

{¶ 69} The fact that Warren could not even argue that his youth was a mitigating factor in the commission of his crimes is fundamentally unfair. I would reverse the judgment of the court of appeals.

---

William D. Mason, Cuyahoga County Prosecuting Attorney, and Jon W. Oebker, Assistant Prosecuting Attorney, for appellee.

Robert L. Tobik, Cuyahoga County Public Defender, and Erika Cunliffe, Assistant Public Defender, for appellant.