[Cite as *In re D.P.*, 2017-Ohio-606.]

**IN THE COURT OF APPEALS OF OHIO**
**THIRD APPELLATE DISTRICT**
**HARDIN COUNTY**


IN RE:

     D.P.,

DELINQUENT CHILD.

CASE NO.  6-16-07


**O P I N I O N**


**Appeal from Hardin County Common Pleas Court**
**Juvenile Division**
**Trial Court No. JD20162021**

**Judgment Reversed and Cause Remanded**

**Date of Decision:    February 21, 2017**


**APPEARANCES:**

    *Michael P. Walton* **for Appellant**

**SHAW, J.**

{¶1} Appellant, D.P., a minor child, appeals the June 22, 2016 judgment of the Hardin County Court of Common Pleas, Juvenile Division, finding that D.P. violated the terms of his probation and ordering him to be committed to the legal custody of the Ohio Department of Youth Services ("DYS").

{¶2} On March 7, 2016, a complaint was filed alleging D.P. to be delinquent for destroying his ankle monitor, which would constitute the offense of vandalism in violation of R.C. 2909.05(B)(2), a felony of the fifth degree, if committed by an adult. On the same day, D.P. was arraigned. The record indicates that D.P. was accompanied by a parent in court and a written waiver of counsel was filed. D.P. entered an admission to the allegation in the complaint. The trial court adjudicated D.P. delinquent and proceeded to disposition. The trial court ordered that D.P. be placed in the legal custody of DYS for secure confinement for a minimum period of six months, the maximum not to exceed D.P.'s twenty-first birthday. The trial court suspended D.P.'s commitment to DYS upon full compliance with the terms of his community control, which included a continuation of his probation and a 90-day sentence in Detention.

{¶3} On March 24, 2016, the trial court conducted a hearing on a motion filed by the State of Ohio requesting that the trial court invoke its previous order to commit D.P. to DYS due to D.P.'s violent conduct in the detention center. The trial

court reimposed the order committing D.P. to the legal custody of DYS. However, the trial court suspended D.P.'s commitment to DYS on the condition that he successfully complete, as part of his probation, a program at the North Central Ohio Rehabilitation Center for a minimum period of nine-months or upon completion of the program.

{¶4} On March 30, 2016, the trial court ordered D.P. to be placed in the custody of the Logan County Detention Center to determine his status after he was expelled from the program at the North Central Ohio Rehabilitation Center. The trial court reimposed D.P.'s commitment to DYS, but suspended it upon condition that D.P. successfully complete a Juvenile Residential Center program and successfully complete his probation. Accordingly, D.P. was placed in the temporary care of the Juvenile Residential Center.

{¶5} On June 21, 2016, the State of Ohio filed a "Motion to Invoke Suspended DYS Commitment," alleging that D.P. had violated the terms of his probation due to his violent conduct with another participant at the Juvenile Residential Center.

{¶6} On June 22, 2016, the trial court held a hearing on the State's motion. D.P. appeared with his father and proceeded without legal counsel. The trial court engaged in a short dialogue with D.P. about the State's allegations of the probation violations. The trial court heard statements from the prosecutor and asked D.P. for

further comments. The trial court then granted the State's motion to invoke the previously ordered commitment to DYS based upon D.P. violating the terms of his probation. Accordingly, the trial court ordered D.P. to be committed to the legal custody of DYS "for institutionalization for an indefinite term consisting of a minimum period of six months, and a maximum period not to exceed the age of twenty-one (21) years." (Doc. No. 18).

{¶7} D.P. filed this appeal, asserting the following assignments of error.

### ASSIGNMENT OF ERROR NUMBER ONE

**THE HARDIN COUNTY JUVENILE COURT VIOLATED D.P.'S RIGHT TO COUNSEL AND TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION, OHIO REVISED CODE SECTION 2151.352 AND JUVENILE RULES 3, 4, AND 29. *IN RE C.S.*, 115 OHIO ST.3D 267, 2007-OHIO-4919, 874 N.E.2D 1177.**

### ASSIGNMENT OF ERROR NUMBER TWO

**THE HARDIN COUNTY JUVENILE COUNTY VIOLATED D.P.'S RIGHT TO DUE PROCESS WHEN IT ADJUDICATED HIM DELINQUENT OF A PROBATION VIOLATION WITHOUT AFFORDING D.P. THE OPPORTUNITY TO ENTER A PLEA THAT WAS KNOWING, INTELLIGENT AND VOLUNTARY, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I SECTION 10 AND 16, OF THE OHIO CONSTITUTION AND JUVENILE RULE 29.**

{¶8} For ease of discussion, we elect to address the assignments of error together.

*A Juvenile's Right to Counsel*

**{¶9}** The Supreme Court of Ohio has recognized that a juvenile has the right to the assistance of counsel in juvenile court proceedings involving criminal aspects. *In re Anderson*, 92 Ohio St.3d 63, 66, 2001-Ohio-131 (2001), citing *In re Gault*, 387 U.S. 1, 31-57, 87 S.Ct. 1428 (1967). Moreover, the Ohio Rules of Juvenile Procedure also provide for a right to counsel in juvenile proceedings. Juvenile Rule 4(A) provides that "[e]very party shall have the right to be represented by counsel[.]" The juvenile right to counsel is also codified in R.C. 2151.352 as follows:

> **A child * * * is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code. * * * If a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person. The court may continue the case to enable a party to obtain counsel, to be represented by the county public defender or the joint county public defender, or to be appointed counsel upon request pursuant to Chapter 120. of the Revised Code. Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them.**

**{¶10}** The Supreme Court of Ohio revisited the issue of a juvenile's right to counsel noting that "numerous constitutional safeguards normally reserved for criminal prosecutions are equally applicable to delinquency proceedings." *In re C.S.*, 115 Ohio St.3d at 275-76, 2007-Ohio-4919, ¶ 73, citing *State v. Walls*, 96 Ohio

St.3d 437, 446, 2002-Ohio-5059. The Supreme Court has further said that "[w]e believe that the fifth sentence of [R.C. 2151.352] reflects the General Assembly's understanding that *Gault* held that the juvenile may waive his rights, including his right to counsel, *see Gault*, 387 U.S. at 41-42, 87 S.Ct. 1428, and that it codifies that right of waiver but only if the juvenile is advised by a parent in considering waiver." *In re C.S.*, 115 Ohio St.3d at 281, 2007-Ohio-4919, ¶ 95.

{¶11} To waive the right to counsel, an effective waiver must be voluntary, knowing, and intelligent. *In re C.S.*, 115 Ohio St.3d 283-84, 2007-Ohio-4919, ¶ 106, citing *State v. Gibson*, 45 Ohio St.2d 366 (1976). Juvenile or appellate courts apply a totality-of-the-circumstances test to ascertain whether a valid waiver of the right to counsel has occurred. In determining the appropriate form of a waiver of the right to counsel, the Supreme Court specified that where a juvenile is charged with a serious offense, the waiver of the right to counsel must be made in open court, recorded, and in writing. *In re C.S.*, 115 Ohio St.3d at 284. This requirement is analogous to the requirement for adult offenders charged with a serious offense. *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, ¶ 109 (The *Brooke* Court defined a serious offense as one where the penalty includes confinement of more than six months. The court also required that the written waiver be filed with the trial court).

*Juvenile Rule 29*

**{¶12}** The Supreme Court of Ohio has also stated that "[a] probation revocation hearing is an adjudicatory hearing, which is held to determine whether a child is delinquent as defined by R.C. 2152.02(F)(2); therefore, both Juv.R. 29, setting forth the procedure for adjudicatory hearings, and Juv.R. 35(B), setting forth the procedure for the revocation of probation, are applicable to the hearing." *In re L.A.B.*, 121 Ohio St.3d 112, 2009-Ohio-354, syllabus.   Because a probation revocation hearing may result in the confinement of a child, it is imperative that a child's waiver of the right to counsel be made knowingly and voluntarily.  *Id.* at ¶ 56. The detailed procedure established by Juv.R. 29 aids juvenile courts in ensuring this right is fully protected, subjecting it to a totality-of-the circumstances test. *Id.* at ¶¶ 56–57.  Specifically, Juv.R. 29(B) states the following:

> **Advisement and Findings at the Commencement of the Hearing. At the beginning of the hearing, the court shall do all of the following:**
>
> > **(1) Ascertain whether notice requirements have been complied with and, if not, whether the affected parties waive compliance;**
> >
> > **(2)  Inform the parties of the substance of the complaint, the purpose of the hearing, and possible consequences of the hearing, including the possibility that the cause may be transferred to the appropriate adult court under Juv. R. 30 where the complaint alleges that a child fourteen years of age**

**or over is delinquent by conduct that would constitute a felony if committed by an adult;**

**(3)   Inform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel;**

**(4)   Appoint counsel for any unrepresented party under Juv. R. 4(A) who does not waive the right to counsel;**

**(5)   Inform any unrepresented party who waives the right to counsel of the right: to obtain counsel at any stage of the proceedings, to remain silent, to offer evidence, to cross-examine witnesses, and, upon request, to have a record of all proceedings made, at public expense if indigent.**

{¶13} Moreover, under Juv.R. 29(D), the juvenile court shall not accept an admission without addressing the party personally and determining both of the following:

**(1)   The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;**

(2)   **The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing**.

{¶14} It has been recognized that a juvenile's admission under Juv.R. 29 is similar to an adult's guilty plea under Crim.R. 11.  *See In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, ¶ 112, quoting *In re Smith*, 3rd Dist. No. 14-05-33, 2006-Ohio-2788, ¶ 13; *In re T.B.*, 8th Dist. Nos. 93422 and 93423, 2010-Ohio-523, ¶ 7.  Both the juvenile and the criminal rules require the trial courts to make careful

inquiries in order to insure that the admission of guilt by a juvenile or a guilty plea by an adult is entered knowingly and voluntarily. *In re A.E.*, 5th Dist. Nos. 10-CA-107 and 10-CA-108, 2011-Ohio-4746, ¶ 48, citing *In re Flynn*, 101 Ohio App.3d 778, 781 (8th Dist.1995).

{¶15} "In a juvenile delinquency case, the preferred practice is strict compliance with Juv.R. 29(D). If the trial court substantially complies with Juv.R. 29(D) in accepting an admission by a juvenile, the plea will be deemed voluntary absent a showing of prejudice by the juvenile or a showing that the totality of the circumstances does not support a finding of a valid waiver." *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, paragraph six of the syllabus. For purposes of juvenile delinquency proceedings, substantial compliance means that in the totality of the circumstances, the juvenile subjectively understood the implications of his plea. *Id*. Therefore, the best method for complying with Juv.R. 29(D) is for a juvenile court to tailor the language of the rule to "the child's level of understanding, stopping after each right and asking whether the child understands the right and knows he is waiving it by entering an admission." *In re Smith*, 3d Dist. Union No. 14-05-33, 2006-Ohio-2788, ¶ 14, quoting *In re Miller*, 119 Ohio App.3d 52, 58 (2d Dist.1997).

*The Record on Appeal*

{¶16} At the outset we note that the record contains a written waiver of the right to counsel signed by D.P and his father at the March 7, 2016 adjudication

hearing on the complaint. Notably, we do not have a transcript from this proceeding on appeal. The issue with respect to the first assignment of error is whether the trial court violated D.P.'s right to counsel by failing to either provide counsel or to obtain a valid waiver of his right to counsel at the June 22, 2016 probation violation hearing in compliance with the Juvenile Rules and case authority previously discussed.

{¶17} The transcript of the June 22, 2016 probation violation hearing reveals that even though D.P. appeared with his father, the trial court did not discuss D.P.'s right to counsel with D.P. or his father, nor was a waiver of the right to counsel obtained from D.P. on the record. Moreover, no written waiver of the right to counsel for this proceeding appears in the record. According to the legal authority previously outlined, the trial court was required to inform D.P. of his right to counsel and to obtain a valid waiver of that right, if necessary, at the June 22, 2016 probation violation hearing. The record fails to establish that this occurred. Therefore, we find merit in D.P.'s first assignment of error and sustain the same.

{¶18} In his second assignment of error, D.P. claims that the juvenile court failed to conduct a proper Juv.R. 29(D) colloquy prior to granting the prosecution's motion to invoke the suspended DYS commitment. Specifically, D.P. claims that the trial court did not ascertain whether he understood (1) the rights that he would be giving up if he entered an admission and (2) the consequences of entering an admission. The transcript from the June 22, 2016 probation violation hearing

demonstrates that trial court asked D.P. if he understood the allegations contained in the State's motion, to which D.P. simply responded, "Yes, sir." The State made a statement regarding D.P.'s unsuccessful termination from the Juvenile Residential Center due to his violent conduct against another individual at the center as the basis for the motion to invoke the DYS commitment. The prosecutor indicated that D.P.'s probation officer was present at the hearing if the trial court wished to inquire of him regarding the incident underlying the alleged probation violation. The trial court did not question D.P.'s probation officer or take any further evidence. Rather, the trial court stated that it was "aware of the facts" and that the court is "on the Board of the Marion County CCF, so [the court has] access to the incident reports." (Trans. at p. 3, 5).

{¶19} The trial court then asked D.P.'s father if he had any comments on the matter. D.P.'s father expressed disappointment in his son's conduct and offered appreciation of the trial court's patience with D.P. The trial court turned to address D.P. and indicated that it had exhausted all less restrictive alternatives to DYS to assist in D.P.'s rehabilitation. The following dialogue then occurred, which notably was the only one of note that took place between the trial court and D.P.

> **TRIAL COURT: * * * Is there anything that you want to say?**
>
> **D.P.: Judge, there's not much to say. But I will say that as a probationee, it's going to be my job to disprove everyone's opinion in this courtroom. And that's my ambition now. It may be I have failed in rehabilitation, yes. But my motivation is now**

-11-

**to see it proven—just prove everyone wrong. I never had that motivation before, and I never realized how strong it could be.**

**TRIAL COURT: Well, I have heard that line of crap before.**

**D.P.: Oh, yeah. Everybody has from me, sir.**

**But I'm not saying I'm going to be perfect. I'm not saying I'm not going to do anything at all. All I'm going to say is, I'm going to prove you guys wrong. And that's—that's my hope.**

**Now, it's not just a thinking I have. It's my hope to prove everybody wrong. And where I'm going, my hope is to have a good record there. Even though it's a bad place, it's my hope. It's not my thinking anymore.**

**That's all I have to say, Judge.**

**TRIAL COURT: Well, there will be treatment available there. There will be psychology services available. There will be education available. You could take advantage of all of those, or you can educate yourself in the way of crime more. That's totally up to you.**

**We will be awaiting to see what the outcome is when you get out. And society will be prepared to deal with you appropriately, whether that's sending you to prison or sending you to college. You're capable of both.**

**So I will grant the motion to invoke. I have an entry that has been prepared to that effect and have signed the same.**

**Anything further from the State.**

**PROSECUTOR: No, You Honor. Thank you.**

**TRIAL COURT: Okay. The Court will stand in recess.**

(June 22, 2016 Hrg. at 7-9).

**{¶20}** Notably, the transcript of the June 22, 2016 probation violation hearing fails to establish that D.P. *even entered a formal admission to the probation violation*. Nevertheless, even though there is some indication from this excerpted portion of the transcript that the trial court attempted to ascertain D.P.'s understanding of the nature of the allegations, there was clearly no discussion between D.P. and the trial court regarding D.P.'s understanding of the consequences of an admission to the probation violation. Moreover, the transcript further reveals that the trial court made no attempt to inform D.P. that by entering an admission he is waiving the right to challenge the witnesses and evidence against him, to remain silent, and to introduce evidence at the hearing, let alone a determination that D.P. is making a knowing, intelligent and voluntary waiver of those rights. *See In re R.H.*, 3d Dist. Allen No. 2016-Ohio-746, ¶ 15 (finding that "[t]he only relevant exchange between the juvenile court and R.H. concerned the nature of the allegations and the voluntariness of R.H.'s admission; the juvenile court failed to discuss the consequences of an admission or the rights that a juvenile waives by entering an admission" and concluding on this basis that the trial court did not comply with Juv.R. 29(D)).

**{¶21}** Accordingly, we conclude that the trial court did not comply with the directives of Juv.R. 29(D) to conduct a meaningful colloquy with D.P. regarding the consequences of an admission *and to obtain a clear admission from him* prior to

granting the State's motion to invoke a suspended DYS commitment based upon a probation violation. The second assignment of error is sustained.

{¶22} Curiously, the State failed to file a brief in this matter. Rather, the State filed a "Notice of Non-Opposition to Appellant's Brief," in which it stated that:

> **The reason for this Notice is that the undersigned has been advised by the Hardin County Juvenile Court that the court proceeding that is necessary to support Appellee's Brief was not properly recorded and cannot be accessed or transcribed. The undersigned was not present and cannot present to this Court an Affidavit of personal knowledge of the content of that hearing. Therefore, the State is without evidence to present in support of its merit brief.**

(Notice, Nov. 21, 2016).

{¶23} Despite this "Notice" filed by the State, the record demonstrates that a transcript of the June 22, 2016 probation violation hearing, which appears to be the only relevant proceeding, was filed as a part of the record in this appeal on August 11, 2016. Therefore, we shall treat this non-responsive "Notice" by the State as a failure to file a brief pursuant to App.R. 18(C), which in turn permits this Court to "accept the appellant's statement of the facts and issues as correct and reverse judgment if appellant's brief reasonably appears to sustain such action."

{¶24} In sum, based upon the transcript of the June 22, 2016 probation violation proceedings, which (1) fails to establish that the trial court informed D.P. of his right to counsel or obtained a valid waiver of D.P.'s right to counsel and (2)

Case No. 6-16-07

fails to establish that the trial court conducted a proper Juv.R. 29(D) colloquy with D.P. and allowed him to enter an admission on the record, together with the State's complete failure to provide any brief or support to the contrary, we sustain the assignments of error. The judgment of the Hardin County Court of Common Pleas, Juvenile Division, is therefore reversed and the matter is remanded for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**